1  BILL LOCKYER
   Attorney General of the State of California
2  CHRISTOPHER AMES
   Senior Assistant Attorney General
3  LARRY G. RASKIN
   State Bar No. 116112
4  Supervising Deputy Attorney General
   JEFFREY SIMPTON
5  State Bar No. 166862
   Deputy Attorney General
6  ELIZABETH LINTON
   State Bar No. 231619
7  Deputy Attorney General
    1300 I Street
8   P.O. Box 944255
    Sacramento, CA 94244-2550
9   Telephone: 916-323-8549
    Fax: 916-323-6882
10  Email: Elizabeth.Linton@doj.ca.gov
   Attorneys for Real Party in Interest/State of California

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **UNITED STATES OF AMERICA and the STATE OF CALIFORNIA ex rel MIKE STIERLI,**<br><br>Plaintiff,<br><br>v.<br><br>**SHASTA SERVICES, INC. dba TIMBERWORKS; and DOES 1 through 50, inclusive,**<br><br>Defendant. | S-04-1955 MCE/PAN |

**STATE OF CALIFORNIA'S
MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS THE
CALIFORNIA FALSE CLAIMS ACT CLAIMS**

BILL LOCKYER
Attorney General of the State of California
CHRISTOPHER AMES
Senior Assistant Attorney General
LARRY G. RASKIN
State Bar No. 116112
Supervising Deputy Attorney General
JEFFREY SIMPTON
State Bar No. 166862
Deputy Attorney General
ELIZABETH LINTON
State Bar No. 231619
Deputy Attorney General
  1300 I Street
  P.O. Box 944255
  Sacramento, CA 94244-2550
  Telephone: 916-323-8549
  Fax: 916-323-6882
  Email: Elizabeth.Linton@doj.ca.gov
Attorneys for Real Party in Interest/State of California

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **UNITED STATES OF AMERICA and the STATE OF CALIFORNIA** *ex rel.* **MIKE STIERLI,**<br><br>Relator Plaintiff,<br><br>v.<br><br>**SHASTA SERVICES, INC. dba TIMBERWORKS; and DOES 1 through 50, inclusive,**<br><br>Defendant. | S-04-1955 MCE/PAN<br><br>**STATE OF CALIFORNIA'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS THE CALIFORNIA FALSE CLAIMS ACT CLAIMS**<br><br>MAY 1, 2006<br>9:00 a.m.<br>Honorable Morrison England |

## I. INTRODUCTION

Q*ui tam* plaintiff Mike Stierli, part-owner of MDS Construction, Inc. (MDS), was an unsuccessful bidder in a California Department of Transportation (CalTrans) project. After an unsuccessful challenge to the bid award process with CalTrans, Stierli filed this *qui tam* action under the California False Claims Act (CFCA or Act). Long before CalTrans awarded the contract to the lowest bidder, Defendant Shasta Services, Inc. (Timberworks), or made any payments to Timberworks, CalTrans thoroughly investigated, considered, and rejected MDS' bid challenges

and the allegations contained therein – which Stierli now simply repeats in his *qui tam* complaint. The evidence does not support the allegations that Timberworks committed a false claims violation.

The complaint is essentially challenging CalTrans' contracting process. Stierli's real complaint is not that Timberworks defrauded the state. Rather, it is that *CalTrans* awarded the contract to Timberworks, and that *CalTrans* failed to properly implement the project's disadvantaged business enterprise (DBE) requirements. However, a disgruntled bidder cannot use the CFCA to challenge the government's contracting practices and decisions. The False Claims Act applies only as to fraud on CalTrans. As such, this action lacks merit. Moreover, this action is contrary to the purposes of the CFCA because it does not help protect the public fisc, and, instead, is a drain on public resources and contrary to public policy.

Under such circumstances, the California Attorney General's Office (CAGO) hereby moves to dismiss the CFCA claims pursuant to California Government Code section 12652(e)(2)(A).[1]

## II. STATEMENT OF FACTS

On June 18, 2002, Timberworks submitted a bid to CalTrans for construction of a truck inspection facility in Siskiyou County. (Dec. Fonseca, Exhs. A, J). Pursuant to federal and state regulations, project bidders were required to either subcontract five percent of the contract work to disadvantaged business enterprise (DBE) companies or document that they made good faith efforts to meet the five percent goal but were unable do so. (Dec. Fonseca, Exh. B, at 1, 45). Timberworks' "Good Faith Efforts" report stated that no DBEs had responded to Timberworks' solicitations. (Dec. Fonseca, Exh. C).

CalTrans' Civil Rights Program reviewed Timberworks' file and concluded on June 26, 2002 that the company had made a good faith effort to meet the five percent DBE goal. (Dec. Fonseca, Exh. D). In conducting the review, CalTrans considered Timberworks' advertisements seeking DBE participation in the project, the total amount of Timberworks' potential work available to DBEs (23.28 percent), and a list of DBE firms directly solicited by Timberworks. In addition, CalTrans

---

1. Hereinafter, all code references are to the California Government code unless otherwise noted.

conducted a random survey of DBEs listed by Timberworks to determine whether Timberworks engaged in bona fide solicitation of those firms as subcontractors on the truck inspection facility. (*Id.*)

Two days after CalTrans determined that Timberworks was the lowest responsible bidder on the project, the second-lowest bidder, MDS, filed a bid protest with CalTrans. (Dec. Fonseca, Exhs. A, E). MDS alleged that Timberworks did not incorporate any DBEs into its bid, despite receipt of a bid proposal from EnTerra Remediation, Inc, a certified DBE. (*Id.*) MDS submitted yet another bid protest on July 13, 2002, seeking reconsideration of CalTrans' determination of Timberworks' good faith efforts. (Dec. Fonseca, Exh. F). The protest letter included copies of EnTerra's letter of interest faxed to Timberworks at 8:36 a.m. on June 18, 2002, the same date as CalTrans' 2:00 p.m. deadline for submitting bid packages on the project.[2] (*Id.*, Dec. Fonseca, Exh. B, at 1).

CalTrans informed MDS on July 25, 2002, that the CalTrans' Civil Rights Program had determined that Timberworks made good faith efforts to meet the DBE goal despite not referencing EnTerra's last minute "letter of interest." (Dec. Fonseca, Exh. G). The next day, MDS appealed the decision to CalTrans' Division Chief. (Dec. Fonseca, Exh. H). In response, CalTrans' Civil Rights Program contacted EnTerra and confirmed that it had faxed quotes to all primary contractors. (Dec. Fonseca, Exh. I). CalTrans then contacted Timberworks and questioned why it had failed to list EnTerra as a rejected DBE. (*Id.*) Timberworks explained that, due to the distance of its office from Sacramento, the company had sent its bid package via Federal Express to a bid courier on June 14, 2002 in order to ensure timely receipt. (Dec. Fonseca, Exh. J). The company had then communicated its final bid amount to the courier via telephone on June 18. At the time Timberworks submitted its bid to the courier, it had received no affirmative responses from DBEs. (*Id.*)

---

2. The Complaint also alleges that another qualified DBE, Terry Pilkington Construction, submitted a response to Timberworks as well. *See* Complaint, ¶ 20, ln 28. The USDOT found that Terry Pilkington Construction is *not* a certified DBE. *See* Dec. Fonseca, Exh. N, at 3.

1    CalTrans wrote to MDS on August 6, 2002, and confirmed CalTrans' original conclusion
2  that Timberworks made a good faith effort to meet the DBE goal. (Dec. Fonseca, Exh. K).
3  CalTrans then approved award of the contract to Timberworks on August 9, 2002. (Dec. Fonseca,
4  Exh. L). MDS did not seek to challenge CalTrans' conclusion through an administrative mandamus
5  proceeding. Instead, MDS filed a protest the next month with the US Department of Transportation
6  (USDOT) Federal Highway Administration Office of Civil Rights and the Office Of Inspector
7  General. (Dec. Fonseca, Exh. M). The protest alleged that Timberworks failed to satisfy the good
8  faith requirement or demonstrate good faith efforts. (*Id.* at 1.) It also alleged "the procedure
9  followed by CalTrans in denying MDS's protest of the proposed award of [the] contract was
10 arbitrary and capricious and failed to meet minimum standards of due process." (*Id.* at 1, 5-6.)

11   While the USDOT protest was pending, Timberworks proceeded with the contract, and
12 CalTrans did not stop Timberworks from completing the work on the project. (Dec. Fonseca, ¶ 9).
13 CalTrans inspected and accepted the finished project on December 31, 2003. CalTrans' acceptance
14 indicated that Timberworks completed the project in accordance with the plans and specifications.
15 (*Id.*, Dec. Fonseca, Exh. L). Seven months after MDS filed its federal protest, USDOT notified
16 MDS on April 16, 2004, of USDOT's conclusion that Timberworks had not met the contract's DBE
17 goal or demonstrated good faith compliance. As a result of the decision, USDOT notified CalTrans
18 that the project was ineligible for Federal-aid participation and required CalTrans to implement
19 additional review procedures. (Dec. Fonseca, Exh. N).

20   CalTrans responded to USDOT's conclusion stating, that upon further evaluation, CalTrans'
21 initial determination of Timberworks' good faith efforts was incorrect. (Dec. Fonseca, Exh. O).
22 CalTrans sent a follow-up letter to USDOT a few weeks later clarifying that this response was
23 simply meant to convey that CalTrans could take a different position than USDOT on the adequacy
24 of Timberworks' good faith efforts. (Dec. Fonseca, Exh. P).

25   Stierli filed this action on September 20, 2004 which alleges that Timberworks: 1) violated
26 the CFCA and Federal FCA by knowingly submitting false claims; 2) violated the CFCA as an
27 inadvertent beneficiary who failed to disclose a false claim within reasonable time after discovery;
28 and 3) engaged in a pattern of racketeering in violation of RICO. On April 7, 2005, The United

States and California filed a joint notice of election to decline intervention.  The CAGO now moves to dismiss the CFCA claims pursuant to Section 12652(e)(2)(A).

### III.  ARGUMENT

**A.  Dismissal of a CFCA Claim Is Warranted Where, As Here, The CAGO Identifies Legitimate Government Purposes Served by Dismissal.**

The primary responsibility for prosecuting CFCA actions involving state funds lies with the CAGO.  *See* § 12652.  The state is the real party in interest, even if the qui tam prosecutes the matter.  § 12652(c)(1); *State ex rel. Bowen v. Bank of Am. Corp.,* 126 Cal.App.4th 225, 237 (Cal. App. 2005) (state is real party in interest); *United States v. Health Possibilities, P.S.C.*, 207 F.3d 335, 341-342 (6th Cir. 2000) (government remains real party in interest even if it elects not to intervene).[3/]  Although the Act creates substantial incentives to encourage "whistleblowers" to help uncover fraudulent claims made to the government, it also includes a number of provisions attempting to curb "parasitic" or "opportunistic" *qui tam* actions.  *Laraway v. Sutro & Co.,* 96 Cal.App.4th 266, 274 (Cal. App. 2002).

The CAGO may move to dismiss a *qui tam* CFCA claim for good cause, despite objection by the *qui tam* plaintiff.  § 12652(e)(2)(A).  The CAGO demonstrates good cause where the dismissal is rationally related to a legitimate government purpose and is not arbitrary, capricious, made in bad faith, based on improper or illegal motives, founded on an inadequate investigation or pretextual.  *Laraway,* 96 Cal.App.4th at 275-276.  Good cause depends on the particular circumstances of each case, and any "matter that has a bearing on the issues at hand may be considered."  *Am. Contract Servs. v. Allied Mold & Die, Inc.,* 94 Cal.App.4th 854, 862 (Cal. App. 2001).  Relevant matters may include the relative merits of the action, the interest of the *qui tam* plaintiff, the purposes underlying the CFCA, and the potential waste of government resources.  *Laraway,* 96 Cal.App. 4th at 276; *see also*, *Allied Mold*, 94 Cal.App.4th at 862.

---

3.  The CFCA is patterned on similar federal legislation, and federal decisions are persuasive on the meaning of the Act.  *Laraway v. Sutro & Co.,* 96 Cal.App.4th 266, 274-275 (Cal. App. 2002)

As discussed in detail below, dismissal of the CFCA claims in this case is rationally related to legitimate government purposes because: 1) Stierli seeks to improperly use the CFCA to challenge CalTrans' contracting process, rather than seeking to prevent fraud against the state; 2) the primary purpose of the CFCA (protecting the public fisc) is not furthered by the action; and 3) dismissal would ensure that competition for state contracts is not chilled by overzealous and improper CFCA prosecutions filed by disgruntled losing bidders. Accordingly, the CAGO's request to dismiss the CFCA claims should be granted.

**B.   Legitimate Reasons Exist to Dismiss The Losing Bidder's CFCA Claims Because He Improperly Uses the Act To Contest CalTrans' Contracting Practices.**

Stierli's complaint is in essence a challenge to the state's bid award process cloaked in CFCA language. California appellate courts have upheld the Attorney General's decision to dismiss such claims over the objections of a *qui tam* plaintiff under circumstances substantially similar to those in this case. *Allied Mold*, 94 Cal.App.4th at 864-866.

In *Allied Mold*, the Department of General Services (DGS) solicited bids for infant training cups. Instead of accepting any of the bids, DGS canceled its solicitation and contracted directly with Allied Mold & Die, who had been the lowest responsive bidder but did not meet the disabled veteran business enterprise (DVBE) requirement. American Contract Services (ACS), a losing bidder on the contract, initiated a CFCA action on behalf of the state as *qui tam* plaintiff against Allied Mold & Die. ACS alleged that DGS awarded the contract to Allied Mold & Die in excess of its authority, that the contract was therefore void, and that Allied Mold & Die's claims for payment were "false claims" under the CFCA.

The appellate court rejected this argument and affirmed dismissal of the case. In reaching this conclusion, the appellate court concluded:

> ACS's complaint is not that Allied defrauded the government by submitting an invoice for payment on the contract entered into with DGS/PD but that DGS/PD did not follow proper contracting practices and ACS was harmed thereby. The False Claims Act is not a proper vehicle for vindicating that harm. *Id.* at 866.

ACS was represented by the same counsel as the *qui tam* in this case, and Stierli now makes the same arguments that the *Allied Mold* court previously rejected. Stierli argues that CalTrans

exceeded its authority in awarding the contract to Timberworks, the contract was therefore void, and all of Timberworks' requests for payment under the contract were "false claims." (Complaint, ¶¶ 24-32). Just as in *Allied Mold*, the CFCA is not a proper vehicle for vindicating such claims where CalTrans conducted a thorough investigation of the facts regarding Timberworks' DBE compliance even before it awarded the contract to Timberworks and long before paying any claims for payment on the project. This is especially true where, as here, CalTrans continues to assert the contract was properly awarded under state contracting laws.

In determining whether Timberworks was DBE compliant, CalTrans reviewed and considered the amount of work Timberworks made available to DBEs and Timberworks' solicitation process. CalTrans contacted DBEs listed in Timberworks' bid package and discussed with Timberworks the company's compliance efforts. After a comprehensive evaluation, CalTrans concluded that Timberworks demonstrated a good faith effort to comply with the contract's DBE requirement – notwithstanding Timberworks' failure to incorporate EnTerra's bid received at 8:36 a.m., just a few hours before the 2:00 p.m. CalTrans' deadline. As demonstrated by its letter dated June 1, 2004, CalTrans continues to contend that Timberworks did make adequate good faith efforts to incorporate DBEs into its bid.

The CFCA is designed "to supplement governmental efforts to identify and prosecute fraudulent claims made against state and local governmental entities." *Allied Mold*, 94 Cal.App.4th at 858. Stierli does not plead facts that support that MDS made fraudulent claims against CalTrans. Rather, Stierli challenges CalTrans' contracting procedures; its conclusion that Timberworks made good faith efforts; and its award of the contract to Timberworks. He does not attempt to prevent fraud on the purported victim agency -- CalTrans.

Indeed, many of the allegations in the complaint are against CalTrans itself, the "victim" agency, on whose behalf the *qui tam* plaintiff is supposedly suing. For example, Stierli alleges that CalTrans acted in excess of its authority because it failed to comply with federal law and regulations governing DBE participation. (Complaint, ¶ 26). He relies upon USDOT's report finding that CalTrans improperly awarded the contract to Timberworks. (¶ 23). Although the report necessarily examines the good faith compliance of Timberworks, it is ultimately a review of CalTrans. The

1 report discusses *CalTrans'* DBE compliance evaluation process, and nowhere does it find that *Timberworks* defrauded the government or submitted false claims to CalTrans.

Stierli further alleges that CalTrans has "knowingly" altered the financial accounting records of the state. (¶ 33, ln 22, 27). He openly states that some of the "claims at issue in the case" are against CalTrans. Specifically, he lists the following as two of the claims at issue in the first cause of action:

> 5. CalTrans activities to justify the selection of Timberworks for contract award, payment of claims under the Contract, and activities in response to investigative inquiry by the US Department of Transportation Civil Rights Office to review the MDS protest and the investigative inquiry by the Office of Inspector General.

> 6. CalTrans modification of State of California accounting records to provide for payment of Timberworks' claims from non-federal, state funds. (¶ 42, lns 23-27, 1-3 (subsequent page)).

These allegations against CalTrans demonstrate that the substance of Stierli's complaint is that the state failed to follow proper contracting procedures. The CFCA is not a proper remedy for such claims. *United States ex rel. Durcholz v. FKW, Inc.*, 189 F.3d, 542, 545 n.2 (7th Cir. 1999) ("It appears that [government] officials ... may have stretched the contracting regulations to or beyond their limits. But the FCA is not an appropriate vehicle for policing technical compliance with administrative regulations.")

Even if CalTrans' evaluation and conclusion regarding Timberworks' DBE compliance were incorrect and "'stretched the contracting regulations to or beyond their limits,'" "'the [C]FCA is not an appropriate vehicle for policing technical compliance with administrative regulations.'" *Allied Mold*, 94 Cal.App.4th at 865, quoting *Durcholz*, 189 F.3d at 545 n.2. This is true regardless of whether the USDOT disagreed with CalTrans' ultimate decision regarding Timberworks' good faith efforts. Accordingly, dismissal of the CFCA claims in this case serves a legitimate government purpose of preventing misuse of the CFCA.

**D.   Good cause exists to dismiss this action because it is contrary to the CFCA's purpose of protecting the public fisc.**

The CFCA is not intended to provide financial remedies for disgruntled bidders and their counsel where the defendant did not commit a false claims violation. Rather, the CFCA is intended

to help the government prosecute fraudulent claims made against governmental entities. *Allied Mold*, 94 Cal.App.4th at 858. The ultimate purpose of the Act is to protect the public treasury and the taxpayers. *State v. Altus Finance, S.A.*, 36 Cal.4th 1284, 1296-97 (2005). The private right of recovery created by the *qui tam* provisions of the CFCA exists not to compensate the *qui tam* relator, but the government. *United States v. Northrop Corp.,* 59 F.3d 953, 958 (9th Cir. 1995) ("The relator's right to recovery exists solely as a mechanism for deterring fraud and returning funds to the federal treasury."); *see also*, *Health Possibilities,* 207 F.3d at 340 ("The FCA is not designed to serve the parochial interests of relators, but to vindicate civic interests in avoiding fraud against public monies.")

Rather than protecting the public fisc and compensating the government for fraud, this action is a drain on public resources. After a careful and thorough review of Timberworks' bid, CalTrans chose to award the contract to Timberworks, allowed Timberworks to complete the truck inspection facility despite the pending federal protest, and inspected and accepted Timberworks' performance. Despite approving Timberworks' performance, CalTrans will likely have to expend significant resources in this litigation in response to discovery requests. Rather than preserving the public fisc, this litigation will create significant additional expenses for the state and simultaneously punish a company that CalTrans does not contend harmed the state. Accordingly, legitimate reasons exist to dismiss the CFCA claims in this action in the furtherance of justice because the false claims are contrary to the purpose of the Act. *See Allied Mold*, 94 Cal.App.4th at 860 (noting that a public prosecutor is charged with doing justice to all involved.)

**E.    Allowing the CFCA to Proceed Would Unduly Burden the State's Ability to Enter into Procurement Contracts**.

Stierli asserts that Timberworks should be liable under the CFCA despite CalTrans' investigation and conclusion that Timberworks complied with DBE requirements. The state has a legitimate interest in ensuring that the CFCA is not misused by unsuccessful, disgruntled public contract bidders as a device to intimidate competitors. Nearly every procurement contract creates construction and interpretation issues between the state and bidders. If the losing bidder is unhappy with the state's resolution of these issues, the CFCA is not an appropriate vehicle to challenge the

1  state's decision. Otherwise, every award process could potentially be converted into a CFCA action
2  with the winning bidder facing the specter of civil penalties and treble damages even when the state
3  – the real party in interest – contends no false claim was committed. Rather than expending the
4  considerable resources necessary to dispute such claims, the winning bidder may ultimately find it
5  financially more prudent to settle the action and avoid bidding on future state projects.
6       The *qui tam*, whose primary motive is financial, has little reason to take important state
7  interests into account especially where, as here, Stierli, the *qui tam* plaintiff, is not an insider but the
8  losing bidder and competitor of Timberworks. Here, CalTrans followed its review procedures and
9  concluded that Timberworks complied with the contract's DBE requirements. Prosecuting winning
10 bidders, like Timberworks, under such circumstances would unduly interfere with the state's ability
11 to enter into procurement contracts and undermine the ability of CalTrans and its contractors to rely
12 upon such agreements. These legitimate state interests are served by dismissal of the CFCA claims
13 in this case.
14 //
15 //
16 //
17 //
18 //
19 //
20 //
21 //
22 //
23 //
24 //
25 //
26 //
27 //
28

**CONCLUSION**

Dismissal of the CFCA claims under the facts described above serve several legitimate government purposes by: (1) preventing misuse of the CFCA as a vehicle for challenging the government's contracting practices; (2) protecting the public fisc; and (3) ensuring that competition for state contracts is not chilled by overzealous CFCA prosecutions. Accordingly, the CAGO has demonstrated good cause for dismissal of the CFCA claims pursuant to Section 12652(e)(2)(A), and its request to dismiss the CFCA claims should be granted.

Dated: March 29, 2006

BILL LOCKYER,
Attorney General

CHRISTOPHER M. AMES,
Senior Assistant Attorney General

LARRY G. RASKIN
Supervising Deputy Attorney General

JEFFREY SIMPTON
Deputy Attorney General


   s/Elizabeth Linton
ELIZABETH LINTON
Deputy Attorney General
Attorneys for the State of California