1  BILL LOCKYER
Attorney General of the State of California
2  CHRISTOPHER AMES
Senior Assistant Attorney General
3  LARRY G. RASKIN
State Bar No. 116112
4  Supervising Deputy Attorney General
JEFFREY SIMPTON
5  State Bar No. 166862
Deputy Attorney General
6  ELIZABETH LINTON
State Bar No. 231619
7  Deputy Attorney General
1300 I Street
8  P.O. Box 944255
Sacramento, CA 94244-2550
9  Telephone: 916-323-8549
Fax: 916-323-6882
10  Email: Elizabeth.Linton@doj.ca.gov
Attorneys for Real Party in Interest/State of California

11

12                     IN THE UNITED STATES DISTRICT COURT

13                   FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **UNITED STATES OF AMERICA and the STATE OF CALIFORNIA** *ex rel.* **MIKE STIERLI,** | S-04-1955 MCE/PAN |
| Relator Plaintiff, | **DECLARATION OF OLIVIA FONSECA IN SUPPORT OF STATE OF CALIFORNIA'S MOTION TO DISMISS THE CALIFORNIA FALSE CLAIMS ACT CLAIMS** |
| v. | |
| **SHASTA SERVICES, INC. dba TIMBERWORKS; and DOES 1 through 50, inclusive,** | |
| Defendant. | MAY 1, 2006 9:00 a.m. Honorable Morrison England |

I, Olivia Fonseca, declare as follows:

    1.    I am and at all relevant times mentioned herein was the Assistant Deputy Director of CalTrans' Civil Rights Program until July 31, 2003 and the Deputy Director of CalTrans' Civil Rights Program from August 1, 2003 until the present. I have personal knowledge of the matters stated herein.

///

///

**Declaration of Olivia Fonseca**

1

2.   On June 19, 2002, CalTrans completed a written bid summary reflecting that Timberworks was the lowest responsible bidder and MDS Construction (MDS) was the second lowest responsible bidder on a CalTrans' project to build a truck inspection facility in Siskiyou County. These bids were submitted by the 2:00 p.m. deadline on the previous day in accordance with CalTrans' bidding notice. (Attached hereto as Exhibit A is a true and correct copy of CalTrans' bid summary. Attached hereto as Exhibit B is a true and correct copy of CalTrans' notice to contractors and instructions to bidders.)

3.   As set forth in the notice to contractors, the contract was to be awarded to the lowest responsible bidder who either complied, pursuant to federal regulations, with the contract's five percent disadvantaged business enterprise (DBE) requirement or demonstrated good faith efforts to do so. Upon determination that Timberworks was the apparent low bidder, CalTrans' Civil Rights Program evaluated Timberworks' "DBE Info. & Good Faith Efforts" report. (Attached as Exhibit C is a true and correct copy of Timberworks' Good Faith Efforts Report.) After conducting a thorough evaluation, the Civil Rights Program concluded on June 26, 2002 that Timberworks demonstrated good faith efforts to meet the five percent DBE goal. (Attached as Exhibit D is a true and correct copy of CalTrans' Good Faith Evaluation Report.)

4.   After announcing that Timberworks was the low bidder, CalTrans received a bid protest letter from MDS, the second low bidder, alleging that Timberworks did not incorporate any DBEs into its bid, despite receipt of a bid proposal from EnTerra Remediation, Inc., a certified DBE. (Attached as Exhibit E is a true and correct copy of the June 21, 2002 protest letter.) MDS submitted a second protest letter to CalTrans dated July 13, 2002 repeating these allegations and asking CalTrans to reconsider the Civil Rights Program's determination that Timberworks made good faith efforts to comply with the DBE requirements. (Attached as Exhibit F is a true and correct copy of the July 13, 2002 protest letter and attachments.) Attached to MDS' July 13 letter was a copy of EnTerra's letter of interest that was faxed to Timberworks at 8:36 a.m. on June 18, 2002. Complete bid packages were due by 2:00 p.m. on that same date.

5.    On July 25, 2002, CalTrans sent a letter to MDS repeating CalTrans' conclusion that Timberworks made good faith efforts to meet the DBE goal. (Attached as Exhibit G is a true and correct copy of the July 25, 2002 CalTrans' response letter.) The next day MDS appealed the decision to CalTrans' Office Engineer. (Attached as Exhibit H is a true and correct copy of the July 26, 2002 protest letter.)

6.    In response to the July 26, 2002 protest letter, the CalTrans' Civil Rights Program further investigated Timberworks' good faith compliance efforts. The Civil Rights Program contacted EnTerra and confirmed that it had faxed quotes to all primary contractors. The Civil Rights Program then called the contact person at Timberworks and asked why the company did not list EnTerra as a rejected DBE. (Attached as Exhibit I is a true and correct copy of the email from the CalTrans' Civil Rights Program.) The Vice President of Timberworks sent a fax explaining that due to the distance of Timberworks' office from Sacramento, the company had sent its bid package via Federal Express to a bid courier on June 14, 2002 in order to ensure timely submission to CalTrans. The company then communicated its final bid amount to the courier via telephone on June 18, 2002. At the time Timberworks submitted its bid to the courier, it had received no affirmative responses from DBEs. (Attached as Exhibit J is a true and correct copy of Timberworks' fax dated August 1, 2002.) Throughout this investigation, Timberworks was responsive and forthright in providing information to CalTrans.

7.    After reviewing the information described above, CalTrans concluded that Timberworks had made good faith efforts to meet the DBE goal even though its bid package did not reference EnTerra's last-minute submission. CalTrans notified MDS on August 6, 2002 that the Civil Rights Program had reconfirmed CalTrans' original decision that Timberworks made good faith efforts to meet the DBE goal. (Attached as Exhibit K is a true and correct copy of CalTrans' August 6, 2002 response letter.) CalTrans approved the award of the truck inspection facility contract to Timberworks on August 9, 2002. (Attached as Exhibit L is a true and correct copy of the State of California's Statement of Ongoing Contracts.)

///

///

1         8.    MDS then filed a complaint with the United States Department of Transportation

2 (USDOT) Federal Highway Administrative Office of Civil Rights on September 13, 2002.

3 (Attached as Exhibit M is a true and correct copy of the complaint to USDOT.)  The complaint

4 challenged, among other things, the procedure that CalTrans used in evaluating Timberworks'

5 good faith efforts to meet the DBE contract goal.

6         9.    During the seven months the USDOT complaint was pending, the contract awarded to

7 Timberworks proceeded.   Timberworks continued to work on the project and CalTrans did not

8 instruct them to stop work. CalTrans paid each claim for payment submitted by Timberworks

9 fully aware of the allegations against Timberworks and fully aware of the pending federal

10 complaint. CalTrans inspected and accepted the finished project on December 31, 2003.  Its

11 acceptance acknowledged that the project was completed in accordance with the plans and

12 specifications. (Attached as Exhibit  L is a true and correct copy of the State of California's

13 Statement of Ongoing Contracts.)

14        10.   Several months after Timberworks completed the truck inspection facility, USDOT

15 notified MDS of its conclusion that Timberworks had not met the contract's DBE good faith

16 efforts requirements and that the project was ineligible for federal funding.  (Attached as Exhibit

17 N is a true and correct copy of USDOT's letter to MDS and Report of Investigation.)

18        11.   CalTrans' Civil Rights Program responded to USDOT by letter explaining the actions

19 it had implemented to improve the Civil Rights Program's DBE evaluation process.  This letter

20 also misstated that CalTrans' initial good-faith determination regarding Timberworks was

21 incorrect.  (Attached as Exhibit O is a true and correct copy of CalTrans' letter to USDOT.)

22 CalTrans later clarified that this statement did not reflect CalTrans' position on Timberworks'

23 good faith efforts; CalTrans had merely intended to convey to USDOT that CalTrans could have

24 a different view on the adequacy of Timberworks' good faith efforts. (Attached as Exhibit P is a

25 true and correct copy of the June 1, 2004 CalTrans' letter to USDOT.)

26 ///

27 ///

28 ///

**Declaration of Olivia Fonseca**

4

1    12. CalTrans' position continues to be that Timberworks demonstrated good faith efforts to

2    meet the DBE contract goal. Throughout the investigation process and contract performance,

3    Timberworks was cooperative and straight-forward with the State of California. Timberworks

4    completed the truck inspection facility within the allotted time for performance, and CalTrans

5    has accepted the work.

6        I declare under penalty of perjury that the foregoing is true and correct. Executed on this

7    _____28_____ day of _March_ , 2006.

8

9                                                       _Olivia Fonseca_

10                                                      **OLIVIA FONSECA**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit
# A

```
STATE OF CALIFORNIA                    DEPARTMENT OF TRANSPORTATION              BID211
                                                                                PAGE 1
BID OPENING DATE   06/18/02                B I D   S U M M A R Y                 06/19/02
CONTRACT NUMBER    02-366704          IN SISKIYOU COUNTY NEAR               CONTRACT CODE 'B '
LOCATION           02-SIS-5-R7.2      MOUNT SHASTA AT THE DUNSMUIR GRADE      1 CONTRACT ITEMS
                                      TRUCK INSPECTION FACILITY

                                   RECONSTRUCT SCALE HOUSE      FEDERAL AID  ACIM-005-9(158)E

               DB GOALS: 16
PROPOSALS ISSUED   16      DISADVANTAGED BUSINESS ENTERPRISE -  5.0%
                           FUND TOTAL   HA42    1,080,000               TOTAL NUMBER OF WORKING DAYS   260

NUMBER OF BIDDERS  3       ENGINEERS EST     992,000.00  AMOUNT UNDER     159,000.00  PERCENT UNDER EST 16.03

  BID RANK         BID TOTAL       BIDDER ID     BIDDER INFORMATION  (NAME/ADDRESS/LOCATION)
  --------         ---------       ---------     -----------------------------------------

     1            833,000.00           2         TIMBERWORKS
                                                                          530 926-4093
                                                                          0044951O
                                                 P O BOX 1240         FAX 530 926-2118
                                                 MOUNT SHASTA CA  96067

     2            948,000.00           1         M D S CONSTRUCTION
                                                                          530 275-2779
                                                                          00667297
                                                 14771 WONDERLAND BLVD FAX 530 275-9483
                                                 REDDING CA  96003

     3          1,124,969.00           3         GIFFORD CONSTRUCTION INC
                                                                          530 226-6000
                                                                          00638891
                                                 P O BOX 492618        FAX 530 226-6005
                                                 REDDING CA  96049-2618
```

# Exhibit B





## STATE OF CALIFORNIA
## DEPARTMENT OF TRANSPORTATION

# NOTICE TO CONTRACTORS
# INSTRUCTIONS TO BIDDERS
# GENERAL CONDITIONS
### AND
# SPECIAL PROVISIONS

## FOR BUILDING ADJACENT TO STATE HIGHWAY IN
### SISKIYOU COUNTY NEAR MOUNT SHASTA AT THE DUNSMUIR GRADE
### TRUCK INSPECTION FACILITY

CONTRACT NO. 02-366704

02-Sis-5-R11.6

Federal Aid Project

ACIM-005-9(158)E

Bids Open: June 18, 2002
Dated: May 20, 2002

OSD

FedGC(01-17-02).DOC

DEPARTMENT OF TRANSPORTATION

# NOTICE TO CONTRACTORS

### CONTRACT NO. 02-366704

02-Sis-5-R11.6

Sealed proposals for the work shown on the plans entitled:

**STATE OF CALIFORNIA; DEPARTMENT OF TRANSPORTATION; PROJECT PLANS FOR BUILDING ADJACENT TO STATE HIGHWAY IN SISKIYOU COUNTY NEAR MOUNT SHASTA AT THE DUNSMUIR GRADE TRUCK INSPECTION FACILITY**

will be received at the Department of Transportation, 1120 N Street, Room 0200, MS #26, Sacramento, CA 95814, until 2 o'clock p.m. on June 18, 2002, at which time they will be publicly opened and read in Room 0100 at the same address.
Proposal forms for this work are included in a separate book entitled:

**STATE OF CALIFORNIA; DEPARTMENT OF TRANSPORTATION; PROPOSAL AND CONTRACT FOR BUILDING ADJACENT TO STATE HIGHWAY IN SISKIYOU COUNTY NEAR MOUNT SHASTA AT THE DUNSMUIR GRADE TRUCK INSPECTION FACILITY**

General work description: Construct a new scale operation and office building.

This project has a goal of 5 percent disadvantaged business enterprise (DBE) participation.
No prebid meeting is scheduled for this project.

**THIS PROJECT IS SUBJECT TO THE "BUY AMERICA" PROVISIONS OF THE SURFACE TRANSPORTATION ASSISTANCE ACT OF 1982 AS AMENDED BY THE INTERMODAL SURFACE TRANSPORTATION EFFICIENCY ACT OF 1991.**

Bids are required for the entire work described herein.
At the time this contract is awarded, the Contractor shall possess either a Class A license or Class B license or a combination of Class C licenses which constitutes a majority of the work.
This contract is subject to state contract nondiscrimination and compliance requirements pursuant to Government Code, Section 12990.
The District in which the work for this project is located has been incorporated into the Department's Northern Region. References in the Instruction to Bidders or the General Conditions or in the special provisions to the district shall be deemed to mean the Northern Region. The office of the District Director for the Northern Region is located at Marysville.
Project plans, special provisions, and proposal forms for bidding this project can only be obtained at the Department of Transportation, Plans and Bid Documents, Room 0200, MS #26, Transportation Building, 1120 N Street, Sacramento, California 95814, FAX No. (916) 654-7028, Telephone No. (916) 654-4490. Use FAX orders to expedite orders for project plans, special provisions and proposal forms. FAX orders must include credit card charge number, card expiration date and authorizing signature. Project plans, special provisions, and proposal forms may be seen at the above Department of Transportation office and at the offices of the District Directors of Transportation at Irvine, Oakland, and the district in which the work is situated.
The successful bidder shall furnish a payment bond and a performance bond.
The Department of Transportation hereby notifies all bidders that it will affirmatively insure that in any contract entered into pursuant to this advertisement, disadvantaged business enterprises will be afforded full opportunity to submit bids in response to this invitation.

The U.S. Department of Transportation (DOT) provides a toll-free "hotline" service to report bid rigging activities. Bid rigging activities can be reported Mondays through Fridays, between 8:00 a.m. and 5:00 p.m., eastern time, Telephone No. 1-800-424-9071. Anyone with knowledge of possible bid rigging, bidder collusion, or other fraudulent activities should use the "hotline" to report these activities. The "hotline" is part of the DOT's continuing effort to identify and investigate highway construction contract fraud and abuse and is operated under the direction of the DOT Inspector General. All information will be treated confidentially and caller anonymity will be respected.

Pursuant to Section 1773 of the Labor Code, the general prevailing wage rates in the county, or counties, in which the work is to be done have been determined by the Director of the California Department of Industrial Relations. These wages are set forth in the General Prevailing Wage Rates for this project, available at the Labor Compliance Office at the offices of the District Director of Transportation for the district in which the work is situated, and available from the California Department of Industrial Relations' internet web site at: http://www.dir.ca.gov. The Federal minimum wage rates for this project as predetermined by the United States Secretary of Labor are available through the California Department of Transportation's Electronic Project Document Distribution Site on the internet at http://hqidoc1.dot.ca.gov/. Addenda to modify the Federal minimum wage rates, if necessary, will be issued to holders of "Proposal and Contract" books. Future effective general prevailing wage rates which have been predetermined and are on file with the California Department of Industrial Relations are referenced but not printed in the general prevailing wage rates.

If there is a difference between the minimum wage rates predetermined by the United States Secretary of Labor and the general prevailing wage rates determined by the Director of the California Department of Industrial Relations for similar classifications of labor, the Contractor and subcontractors shall pay not less than the higher wage rate. The Department will not accept lower State wage rates not specifically included in the Federal minimum wage determinations. This includes "helper" (or other classifications based on hours of experience) or any other classification not appearing in the Federal wage determinations. Where Federal wage determinations do not contain the State wage rate determination otherwise available for use by the Contractor and subcontractors, the Contractor and subcontractors shall pay not less than the Federal minimum wage rate which most closely approximates the duties of the employees in question.

DEPARTMENT OF TRANSPORTATION

Deputy Director Transportation Engineering

Dated  May 20, 2002

FTN

Contract No.  02-366704

2

STATE OF CALIFORNIA

DEPARTMENT OF TRANSPORTATION

# INSTRUCTIONS TO BIDDERS
# AND
# GENERAL CONDITIONS
# FOR
# BUILDING CONSTRUCTION

**JANUARY 2002**

*Issued by*

**DEPARTMENT OF TRANSPORTATION**



Contract No.  02-366704

3

INSTRUCTIONS TO BIDDERS

SECTION 1

PROPOSAL REQUIREMENTS AND CONDITIONS

**1-1.01 GENERAL**

·    The bidder shall carefully examine the instructions contained herein and shall be satisfied as to the conditions with which the bidder must comply prior to bid and to the conditions affecting the award of contract.

·    These instructions form a part of the contract documents.

·    Attention is directed to Section 1-1.01, "General," of the General Conditions regarding the use of masculine gender pronouns in these Instructions to Bidders.

**1-1.02 CONTRACTOR'S LICENSING LAWS**

·    Attention is directed to the provisions of Chapter 9 of Division 3 of the Business and Professions Code concerning the licensing of contractors.

·    All bidders and contractors shall be licensed in conformance with the laws of this State and any bidder or contractor not so licensed is subject to the penalties imposed by those laws.

·    Attention is also directed to the requirements in Public Contract Code Section 10164. In all projects where Federal funds are involved, the Contractor shall be properly licensed at the time the contract is awarded.

**1-1.03 EXAMINATION OF PLANS, SPECIAL PROVISIONS AND SITE OF THE WORK**

·    The bidder shall examine carefully the site of the work contemplated, the plans and special provisions and these instructions to bidders and contract forms therefor. The submission of a bid shall be conclusive evidence that the bidder has investigated and is satisfied as to the conditions to be encountered, as to the character, quality, and scope of work to be performed, the quantities of materials to be furnished, and as to the requirements of these instructions to bidders, plans, special provisions, and the contract.

·    Where the Department has made investigations of site conditions, including subsurface conditions in areas where work is to be performed under the contract, bidders or Contractors may, upon written request, inspect the records of the Department as to those investigations subject to and upon the conditions hereinafter set forth.

·    Where there has been prior construction by the Department or other public agencies within the project limits, records of the prior construction that are currently in the possession of the Department and which have been used by, or are known to, the designers and administrators of the project will be made available for inspection by bidders or Contractors, upon written request, subject to the conditions hereinafter set forth. Those records may include, but are not limited to, as-built drawings, design calculations, foundation and site studies, project reports and other data assembled in connection with the investigation, design, construction and maintenance of those prior projects.

·    Inspection of those records of investigations and project records may be made at the office of the district in which the work is situated, or in the case of records of investigations related to structure work, at the Transportation Laboratory, Sacramento, California. The records of investigations and project records are not a part of the contract and are available solely for the convenience of the bidder or contractor. It is expressly understood and agreed that the Department assumes no responsibility whatsoever in respect to the sufficiency or accuracy of the investigations thus made, the records thereof, or of project records, or of the interpretations set forth therein or made by the Department in its use thereof and there is no warranty or guaranty, either express or implied, that the conditions indicated by the investigations or records are representative of those existing in or throughout those areas, or any part thereof, or that unlooked-for developments may not occur, or that materials other than, or in proportions different from those indicated, may not be encountered.

·    No information derived from the inspection of investigations or compilation thereof made by the Department or from the Engineer, or his assistants, will in any way relieve the bidder or contractor from any risk or from properly fulfilling the terms of the contract.

**1-1.04 PROPOSAL FORMS**

·    The Department will furnish to each bidder a standard proposal form, which, when filled out and executed may be submitted as that bidder's bid. Bids not presented on forms so furnished, and copies or facsimiles of the bidder's completed and executed proposal forms submitted as a bid will be rejected.

·    The proposal form is bound together with the contract in a book entitled "Proposal and Contract." The proposal shall set forth the bid price, in clearly legible figures, in the space provided, and shall be signed by the bidder, who shall fill out all blanks in the proposal form as therein required.

·    The proposal shall be submitted as directed in the "Notice to Contractors" under sealed cover plainly marked as a proposal, and identifying the project to which the proposal relates and the date of the bid opening therefor. Proposals which are not properly marked may be disregarded.

· All proposal forms other than for "District Opening" projects shall be obtained from the Department of Transportation, Plans and Bid Documents, Room 0200, Transportation Building, 1120 N Street, California 95814, or as otherwise designated in the "Notice to Contractor."

· Proposals for "District Opening" projects shall be made on forms obtained from the District Director of Transportation in whose district the work is to be performed, but in all other respects the provisions in this Section 1-1.04 shall apply.

## 1-1.05  REQUIRED LISTING OF PROPOSED SUBCONTRACTORS

· Each proposal shall have listed therein the name and address of each subcontractor to whom the bidder proposes to subcontract portions of the work in an amount in excess of one-half of one percent of the total bid, in conformance with the Subletting and Subcontracting Fair Practices Act, commencing with Section 4100 of the Public Contract Code. The bidder's attention is invited to other provisions of the Act related to the imposition of penalties for a failure to observe its provisions by using unauthorized subcontractors or by making unauthorized substitutions.

· A sheet for listing the subcontractors, as required herein, is included in the "Proposal and Contract" book.

## 1-1.055  STATE EMPLOYEES AND DESIGN ENGINEERS MAY NOT BID ON CONSTRUCTION CONTRACTS

· No employee of the State shall be eligible to submit a proposal for, nor to subcontract for any portion of, nor to supply any materials for any contract administered by the Department.

· No engineering or architectural firm which has provided design services for a project shall be eligible to submit a proposal for the contract to construct the project nor to subcontract for any portion of the work. The ineligible firms include the prime contractor for design, subcontractors of portions of the design, and affiliates of either. An affiliate is a firm which is subject to the control of the same persons, through joint ownership or otherwise.

## 1-1.06  PREVIOUS DISQUALIFICATION, REMOVAL OR OTHER PREVENTION OF BIDDING

· Pursuant to Section 10162 of the Public Contract Code the bidder shall complete, under penalty of perjury, the questionnaire in the Proposal relating to previous disqualification, removal or other prevention of bidding of the bidder, or officers or employees of the bidder because of violation of law or a safety regulation.

· A bid may be rejected on the basis of a bidder, any officer of the bidder, or any employee of the bidder who has a proprietary interest in the bidder, having been disqualified, removed, or otherwise prevented from bidding on, or completing a Federal, State, or local project because of a violation of law or a safety regulation.

## 1-1.07  PROPOSAL GUARANTY

· All bids shall be presented under sealed cover and accompanied by one of the following forms of bidder's security:

Cash, a cashier's check, a certified check, or a bidder's bond executed by an admitted surety insurer, made payable to the Director of Transportation.

· The security shall be in an amount equal to at least 10 percent of the amount bid. A bid will not be considered unless one of the forms of bidder's security is enclosed with it.

· The bidder's bond shall conform to the bond form in the book entitled "Proposal and Contract" for the project and shall be properly filled out and executed. The bidder's bond form included in that book may be used. Upon request, "Bidder's Bond" forms may be obtained from the Department of Transportation.

## 1-1.08  COMPLIANCE WITH ORDERS OF THE NATIONAL LABOR RELATIONS BOARD

· Pursuant to Public Contract Code Section 10232, the Contractor shall swear by a statement, under penalty of perjury, that no more than one final, unappealable finding of contempt of court by a Federal court has been issued against the Contractor within the immediately preceding 2-year period because of the Contractor's failure to comply with an order of a Federal court which orders the Contractor to comply with an order of the National Labor Relations Board. For purposes of Section 10232 a finding of contempt does not include any finding which has been vacated, dismissed, or otherwise removed by the court because the Contractor has complied with the order which was the basis for the finding. The State may rescind any contract in which the Contractor falsely swears to the truth of the statement required by Section 10232.

· The statement required by Public Contract Code Section 10232 is on the page preceding the signature page of the Proposal.

## 1-1.09  WITHDRAWAL OF PROPOSALS

· Any bid may be withdrawn at any time prior to the date and time fixed for the opening of bids only by written request for the withdrawal of the bid filed at the location at which the bid was received by the Department. The request shall be executed by the bidder or the bidder's duly authorized representative. The withdrawal of a bid does not prejudice the right of the bidder to file a new bid. Whether or not bids are opened exactly at the time fixed for opening bids, a bid will not be received after that time, nor may any bid be withdrawn after the time fixed for the opening of bids.

## 1-1.10 PUBLIC OPENING OF PROPOSALS

· Proposals will be opened and read publicly at the time and place indicated in the Notice to Contractors. Bidders or their authorized agents are invited to be present.

## 1-1.11 REJECTION OF PROPOSALS

· Proposals may be rejected if they have been transferred to another bidder, or if they show any alterations of form, additions not called for, conditional bids, incomplete bids, erasures, or irregularities of any kind.

· When proposals are signed by an agent, other than the officer or officers of a corporation authorized to sign contracts on its behalf or a member of a partnership, a "Power of Attorney" must be on file with the Department prior to opening bids or shall be submitted with the proposal; otherwise, the proposal may be rejected as irregular and unauthorized.

## 1-1.12 COMPETITIVE BIDDING

· If more than one proposal be offered by any individual, firm, copartnership, corporation, association, or any combination thereof, under the same or different names, all of those proposals may be rejected. A party who has quoted prices on materials or work to a bidder is not thereby disqualified from quoting prices to other bidders, or from submitting a bid directly for the materials or work.

· All bidders are put on notice that any collusive agreement to control or affect the awarding of this contract is in violation of the competitive bidding requirements of the State Contract Act and the Business and Professions Code and may render void any contract let under those circumstances.

## 1-1.13 RELIEF OF BIDDERS

· Attention is directed to the provisions of Public Contract Code Sections 5100 to 5107, inclusive, concerning relief of bidders and in particular to the requirement therein, that if the bidder claims a mistake was made in the bid presented, the bidder shall give the Department written notice within 5 days after the opening of the bids of the alleged mistake, specifying in the notice in detail how the mistake occurred.

## 1-1.14 INELIGIBILITY TO CONTRACT

· Public Contract Code Section 10285.1 provides as follows:

Any State agency may suspend, for a period of up to three years from the date of conviction, any person from bidding upon, or being awarded, a public works or services contract with the agency under this part or from being a subcontractor at any tier upon the contract, if that person, or any partner, member, officer, director, responsible managing officer, or responsible managing employee thereof, has been convicted by a court of competent jurisdiction of any charge of fraud, bribery, collusion, conspiracy, or any other act in violation of any State or Federal antitrust law in connection with the bidding upon, award of, or performance of, any public works contract, as defined in Section 1100, with any public entity, as defined in Section 1101, including, for the purposes of this article, the Regents of the University of California or the Trustees of the California State University. A State agency may determine the eligibility of any person to enter into a contract under this article by requiring the person to submit a statement under penalty of perjury declaring that neither the person nor any subcontractor to be engaged by the person has been convicted of any of the offenses referred to in this section within the preceding three years.

· A form for the statement required by Section 10285.1 is included in the Proposal.

## SECTION 2
## AWARD AND EXECUTION OF CONTRACT

### 2-1.01 AWARD OF CONTRACT

· The right is reserved to reject any and all proposals. The award of the contract, if it be awarded, will be to the lowest responsible bidder whose proposal complies with all the requirements prescribed. The award, if made, will be made within 30 days after the opening of the proposals. This period will be subject to extension for any further period as may be agreed upon in writing between the Department and the bidder concerned.

### 2-1.02 RETURN OF PROPOSAL GUARANTIES

· The proposal guaranties accompanying the proposals of the first, second and third lowest responsible bidders will be retained until the contract has been finally executed, after which all those proposal guaranties, except bidders' bonds and any guaranties which have been forfeited, will be returned to the respective bidders whose proposals they accompany. The proposal guaranties, other than bidder's bonds, submitted by all other unsuccessful bidders will be returned upon determination, by the Department, of the first, second and third lowest responsible bidders.

### 2-1.03 CONTRACT BONDS

· The successful bidder shall furnish the 2 bonds required by the State Contract Act. One bond shall secure the payment of the claims of laborers, mechanics or materialmen employed on the work under the contract and the other bond shall guarantee the faithful performance of the contract. The bond forms will be furnished to the successful bidder by the Department.

· Except as otherwise provided in Section 3248 of the Civil Code and Section 30154 of the Streets and Highways Code, the payment bond shall be in a sum equal to the contract price and the performance bond shall be in a sum equal to at least one-half of the contract price.

· All alterations, extensions of time, extra and additional work, and other changes authorized by the General Conditions, the special provisions or any part of the contract may be made without securing the consent of the surety or sureties on the contract bonds.

### 2-1.04 EXECUTION OF CONTRACT

· The contract shall be signed by the successful bidder and returned, together with the contract bonds, within 8 days, not including Saturdays, Sundays and legal holidays, after the bidder has received the contract for execution.

### 2-1.05 FAILURE TO EXECUTE CONTRACT

· Failure of the lowest responsible bidder, the second lowest responsible bidder, or the third lowest responsible bidder to execute the contract and file acceptable bonds as provided herein within 8 days, not including Saturdays, Sundays and legal holidays, after that bidder has received the contract for execution shall be just cause for the forfeiture of the bidder's security. The successful bidder may file with the Department a written notice, signed by the bidder or the bidder's authorized representative, specifying that the bidder will refuse to execute the contract if it is presented. The filing of this notice shall have the same force and effect as the failure of the bidder to execute the contract and furnish acceptable bonds within the time hereinbefore prescribed.

# STATE OF CALIFORNIA
# DEPARTMENT OF TRANSPORTATION

---

# SPECIAL PROVISIONS

### Annexed to Contract No. 02-366704

## DIVISION 0  BIDDING AND CONTRACT REQUIREMENTS

## 0.01  INSTRUCTIONS TO BIDDERS AND GENERAL CONDITIONS

The work embraced herein shall conform to the provisions in the Instructions to Bidders and General Conditions for Building Construction of the Department of Transportation, dated January, 2002, a single publication attached hereto and referred to herein as "Instructions to Bidders" and "General Conditions", and the following special provisions.

In case of conflict between the Instructions to Bidders or the General Conditions and these special provisions, the special provisions shall take precedence over and be used in lieu of the conflicting portions.

## 0.02  PROPOSAL REQUIREMENTS AND CONDITIONS

The bidder's attention is directed to the provisions in Section 1, "Proposal Requirements and Conditions," of the Instructions to Bidders, and these special provisions for the requirements and conditions which the bidder must observe in the preparation of the proposal form and the submission of the bid.

In addition to the subcontractors required to be listed in conformance with Section 1-1.05, "Required Listing of Proposed Subcontractors," of the Instructions to Bidders, each proposal shall have listed therein the portion of work that will be performed by each subcontractor listed.

The Bidder's Bond form mentioned in the last paragraph in Section 1-1.07, "Proposal Guaranty," of the Instructions to Bidders will be found following the signature page of the Proposal.

In conformance with Public Contract Code Section 7106, a Noncollusion Affidavit is included in the Proposal. Signing the Proposal shall also constitute signature of the Noncollusion Affidavit.

The Contractor, sub recipient or subcontractor shall not discriminate on the basis of race, color, national origin, or sex in the performance of this contract. The Contractor shall carry out applicable requirements of 49 CFR part 26 in the award and administration of DOT-assisted contracts. Failure by the Contractor to carry out these requirements is a material breach of this contract, which may result in the termination of this contract or such other remedy as the recipient deems appropriate. Each subcontract signed by the bidder must include this assurance.

## 0.0215  FEDERAL LOBBYING RESTRICTIONS

Section 1352, Title 31, United States Code prohibits Federal funds from being expended by the recipient or any lower tier subrecipient of a Federal-aid contract to pay for any person for influencing or attempting to influence a Federal agency or Congress in connection with the awarding of any Federal-aid contract, the making of any Federal grant or loan, or the entering into of any cooperative agreement.

If funds other than Federal funds have been paid for the same purposes in connection with this Federal-aid contract, the recipient shall submit an executed certification and, if required, submit a completed disclosure form as part of the bid documents.

A certification for Federal-aid contracts regarding payment of funds to lobby Congress or a Federal agency is included in the Proposal. Standard Form - LLL, "Disclosure of Lobbying Activities," with instructions for completion of the Standard Form is also included in the Proposal. Signing the Proposal shall constitute signature of the Certification.

The above-referenced certification and disclosure of lobbying activities shall be included in each subcontract and any lower-tier contracts exceeding $100,000. All disclosure forms, but not certifications, shall be forwarded from tier to tier until received by the Engineer.

The Contractor, subcontractors and any lower-tier contractors shall file a disclosure form at the end of each calendar quarter in which there occurs any event that requires disclosure or that materially affects the accuracy of the information contained in any disclosure form previously filed by the Contractor, subcontractors and any lower-tier contractors. An event that materially affects the accuracy of the information reported includes:

0015

A. A cumulative increase of $25,000 or more in the amount paid or expected to be paid for influencing or attempting to influence a covered Federal action; or

B. A change in the person(s) or individual(s) influencing or attempting to influence a covered Federal action; or,

C. A change in the officer(s), employee(s), or Member(s) contacted to influence or attempt to influence a covered Federal action.

## 0.024 DISADVANTAGED BUSINESS ENTERPRISE (DBE)

This project is subject to Part 26, Title 49, Code of Federal Regulations entitled "Participation by Disadvantaged Business Enterprises in Department of Transportation Financial Assistance Programs." The Regulations in their entirety are incorporated herein by this reference.

Bidders shall be fully informed respecting the requirements of the Regulations and the Department's Disadvantaged Business Enterprise (DBE) program developed pursuant to the Regulations; particular attention is directed to the following matters:

A. A DBE must be a small business concern as defined pursuant to Section 3 of U.S. Small Business Act and relevant regulations promulgated pursuant thereto.

B. A DBE may participate as a prime contractor, subcontractor, joint venture partner with a prime or subcontractor, vendor of material or supplies, or as a trucking company.

C. A DBE bidder, not bidding as a joint venture with a non-DBE, will be required to document one or a combination of the following:

1. The bidder will meet the goal by performing work with its own forces.

2. The bidder will meet the goal through work performed by DBE subcontractors, suppliers or trucking companies.

3. The bidder, prior to bidding, made adequate good faith efforts to meet the goal.

D. A DBE joint venture partner must be responsible for a clearly defined portion of the work to be performed. Responsibility means actually performing, managing and supervising that portion of the work with its own forces. The DBE joint venture partner must share in the capital contribution, control, management, risks and profits of the joint venture. The DBE joint venturer must submit the joint venture agreement with the proposal or the DBE Information form required in the Section entitled "Submission of DBE Information" of these special provisions.

E. A DBE must perform a commercially useful function, i.e., must be responsible for the execution of a distinct element of the work and must carry out its responsibility by actually performing, managing and supervising the work.

F. DBEs must be certified by either the California Department of Transportation, or by a participating State of California or local agency which certifies in conformance with Title 49, Code of Federal Regulations, Part 26, as of the date of bid opening. It is the Contractor's responsibility to verify that DBEs are certified. Listings of DBEs certified by the Department are available from the following sources:

1. The Department's DBE Directory, which is published quarterly. This Directory may be obtained from the Department of Transportation, Materiel Operations Branch, Publication Distribution Unit, 1900 Royal Oaks Drive, Sacramento, California 95815, Telephone: (916) 445-3520.

2. The Department's Electronic Information Bulletin Board Service, which is accessible by modem and is updated weekly. The Bulletin Board may be accessed by first contacting the Department's Business Enterprise Program at Telephone: (916) 227-8937 and obtaining a user identification and password.

3. The Department's web site at http://www.dot.ca.gov/hq/bep/index.htm.

4. The organizations listed in the Section entitled "DBE Goal for this Project" of these special provisions.

G. Credit for materials or supplies purchased from DBEs will be as follows:

1. If the materials or supplies are obtained from a DBE manufacturer, 100 percent of the cost of the materials or supplies will count toward the DBE goal. A DBE manufacturer is a firm that operates or maintains a factory or establishment that produces, on the premises, the materials, supplies, articles, or equipment required under the contract and of the general character described by the specifications.

2. If the materials or supplies are purchased from a DBE regular dealer, 60 percent of the cost of the materials or supplies will count toward the DBE goal. A DBE regular dealer is a firm that owns, operates, or maintains a store, warehouse, or other establishment in which the materials, supplies, articles or equipment of the general character described by the specifications and required under the contract are bought, kept in stock, and regularly

sold or leased to the public in the usual course of business. To be a DBE regular dealer, the firm must be an established, regular business that engages, as its principal business and under its own name, in the purchase and sale or lease of the products in question. A person may be a DBE regular dealer in such bulk items as petroleum products, steel, cement, gravel, stone, or asphalt without owning, operating, or maintaining a place of business as provided in this paragraph G.2, if the person both owns and operates distribution equipment for the products. Any supplementing of regular dealers' own distribution equipment shall be by a long-term lease agreement and not on an ad hoc or contract-by-contract basis. Packagers, brokers, manufacturers' representatives, or other persons who arrange or expedite transactions are not DBE regular dealers within the meaning of this paragraph G.2.

3. Credit for materials or supplies purchased from a DBE which is neither a manufacturer nor a regular dealer will be limited to the entire amount of fees or commissions charged for assistance in the procurement of the materials and supplies, or fees or transportation charges for the delivery of materials or supplies required on a job site, provided the fees are reasonable and not excessive as compared with fees charged for similar services.

H. Credit for DBE trucking companies will be as follows:

1. The DBE must be responsible for the management and supervision of the entire trucking operation for which it is responsible on a particular contract, and there cannot be a contrived arrangement for the purpose of meeting the DBE goal.
2. The DBE must itself own and operate at least one fully licensed, insured, and operational truck used on the contract.
3. The DBE receives credit for the total value of the transportation services it provides on the contract using trucks its owns, insures, and operates using drivers it employs.
4. The DBE may lease trucks from another DBE firm, including an owner-operator who is certified as a DBE. The DBE who leases trucks from another DBE receives credit for the total value of the transportation services the lessee DBE provides on the contract.
5. The DBE may also lease trucks from a non-DBE firm, including an owner-operator. The DBE who leases trucks from a non-DBE is entitled to credit only for the fee or commission it receives as a result of the lease arrangement. The DBE does not receive credit for the total value of the transportation services provided by the lessee, since these services are not provided by a DBE.
6. For the purposes of this paragraph H, a lease must indicate that the DBE has exclusive use of and control over the truck. This does not preclude the leased truck from working for others during the term of the lease with the consent of the DBE, so long as the lease gives the DBE absolute priority for use of the leased truck. Leased trucks must display the name and identification number of the DBE.

I. Noncompliance by the Contractor with the requirements of the regulations constitutes a breach of this contract and may result in termination of the contract or other appropriate remedy for a breach of this contract.
J. Bidders are encouraged to use services offered by financial institutions owned and controlled by DBEs.

## 0.025  DBE GOAL FOR THIS PROJECT

The Department has established the following goal for Disadvantaged Business Enterprise (DBE) participation for this project:

Disadvantaged Business Enterprise (DBE): 5 percent

Bidders may use the services of the following firms to contact interested DBEs. These firms are available to assist DBEs in preparing bids for subcontracting or supplying materials.

0017

The following firms may be contacted for projects in the following locations:

| Districts 04, 05 (except San Luis Obispo and Santa Barbara Counties), 06 (except Kern County) and 10: | Districts 08, 11 and 12: |
|---|---|
| Triaxial Management Services, Inc. - Oakland<br><br>1545 Willow Street, 1st Floor<br>Oakland, CA  94607<br>Telephone - (510) 286-1313<br>FAX No. - (510) 286-6792 | Triaxial Management Services, Inc. - San Diego<br>2725 Congress Street,<br>Suite 1-D<br>San Diego, CA  92110<br>Telephone - (619) 543-5109<br>FAX No. - (619) 543-5108 |
| Districts 07 and 08; in San Luis Obispo and Santa Barbara Counties in District 05; and in Kern County in District 06: | Districts 01, 02, 03 and 09: |
| Triaxial Management Services, Inc. - Los Angeles<br>2594 Industry Way, Suite 101<br>Lynwood, CA  90262<br>Telephone - (310) 537-6677<br>FAX No. - (310) 637-0128 | Triaxial Management Services, Inc. - Sacramento<br>930 Alhambra Blvd., #205<br>Sacramento, CA  95816<br>Telephone - (916) 553-4172<br>FAX No. - (916) 553-4173 |

## 0.026 SUBMISSION OF DBE INFORMATION

The required DBE information shall be submitted on the "CALTRANS BIDDER - DBE INFORMATION" form included in the Proposal. If the DBE information is not submitted with the bid, the DBE Information form shall be removed from the documents prior to submitting the bid.

It is the bidder's responsibility to make enough work available to DBEs and to select those portions of the work or material needs consistent with the available DBEs to meet the goal for DBE participation or to provide information to establish that, prior to bidding, the bidder made adequate good faith efforts to do so.

If DBE information is not submitted with the bid, the apparent successful bidder (low bidder), the second low bidder and the third low bidder shall submit DBE information to the Department of Transportation, 1120 N Street, Room 0200, MS #26, Sacramento, California  95814 so the information is received by the Department no later than 4:00 p.m. on the fourth day, not including Saturdays, Sundays and legal holidays, following bid opening. DBE information sent by U.S. Postal Service certified mail with return receipt and certificate of mailing and mailed on or before the third day, not including Saturdays, Sundays and legal holidays, following bid opening will be accepted even if it is received after the fourth day following bid opening. Failure to submit the required DBE information by the time specified will be grounds for finding the bid or proposal nonresponsive. Other bidders need not submit DBE information unless requested to do so by the Department.

The bidder's DBE information shall establish that good faith efforts to meet the DBE goal have been made. To establish good faith efforts, the bidder shall demonstrate that the goal will be met or that, prior to bidding, adequate good faith efforts to meet the goal were made.

Bidders are cautioned that even though their submittal indicates they will meet the stated DBE goal, their submittal should also include their adequate good faith efforts information along with their DBE goal information to protect their eligibility for award of the contract in the event the Department, in its review, finds that the goal has not been met.

The bidder's DBE information shall include the names, addresses and phone numbers of DBE firms that will participate, with a complete description of work or supplies to be provided by each, the dollar value of each DBE transaction, and a written confirmation from the DBE that it is participating in the contract. A copy of the DBE's quote will serve as written confirmation that the DBE is participating in the contract. When 100 percent of a portion of the work is not to be performed or furnished by a DBE, a description of the exact portion of that work to be performed or furnished by that DBE shall be included in the DBE information, including the planned location of that work. The work that a DBE prime contractor has committed to performing with its own forces as well as the work that it has committed to be performed by DBE subcontractors, suppliers and trucking companies will count toward the goal.

The information necessary to establish the bidder's adequate good faith efforts to meet the DBE goal should include:

A.  The names and dates of each publication in which a request for DBE participation for this project was placed by the bidder.

B. The names and dates of written notices sent to certified DBEs soliciting bids for this project and the dates and methods used for following up initial solicitations to determine with certainty whether the DBEs were interested.

C. The portions of the work which the bidder made available to DBE firms, including, where appropriate, any breaking down of the portions of the work (including those portions normally performed by the bidder with its own forces) into economically feasible units to facilitate DBE participation. It is the bidder's responsibility to demonstrate that sufficient work to meet the DBE goal was made available to DBE firms.

D. The names, addresses and phone numbers of rejected DBE firms, the firms selected for that work, and the reasons for the bidder's choice.

E. Efforts made to assist interested DBEs in obtaining bonding, lines of credit or insurance, and any technical assistance or information related to the plans, specifications and requirements for the work which was provided to DBEs.

F. Efforts made to assist interested DBEs in obtaining necessary equipment, supplies, materials, or related assistance or services, excluding supplies and equipment the DBE subcontractor purchases or leases from the prime contractor or its affiliate.

G. The names of agencies contacted to provide assistance in contacting, recruiting and using DBE firms.

H. Any additional data to support a demonstration of good faith efforts.

## 0.03 AWARD AND EXECUTION OF CONTRACT

The bidder's attention is directed to the provisions in Section 2, "Award and Execution of Contract," of the Instructions to Bidders and these special provisions for the requirements and conditions concerning award and execution of contract.

The award of the contract, if it be awarded, will be to the lowest responsible bidder whose proposal complies with all the requirements prescribed and who has met the goal for DBE participation or has demonstrated, to the satisfaction of the Department, adequate good faith efforts to do so. Meeting the goal for DBE participation or demonstrating, to the satisfaction of the Department, adequate good faith efforts to do so is a condition for being eligible for award of contract.

A "Payee Data Record" form will be included in the contract documents to be executed by the successful bidder. The purpose of the form is to facilitate the collection of taxpayer identification data. The form shall be completed and returned to the Department by the successful bidder with the executed contract and contract bonds. For the purposes of the form, payee shall be deemed to mean the successful bidder. The form is not to be completed for subcontractors or suppliers. Failure to complete and return the "Payee Data Record" form to the Department as provided herein will result in the retention of 31 percent of payments due the contractor and penalties of up to $20,000. This retention of payments for failure to complete the "Payee Data Record" form is in addition to any other retention of payments due the Contractor.

## 0.04 BEGINNING OF WORK, TIME OF COMPLETION AND LIQUIDATED DAMAGES

Attention is directed to the provisions in Section 6-1.03, "Beginning of Work," Section 6-1.07, "Time of Completion," and Section 6-1.08, "Liquidated Damages," of the General Conditions and these special provisions.

The Contractor shall begin work within 15 calendar days after the contract has been approved by the Attorney General or the attorney appointed and authorized to represent the Department of Transportation.

This work shall be diligently prosecuted to completion before the expiration of **260 WORKING DAYS** beginning on the fifteenth calendar day after approval of the contract.

The Contractor shall pay to the State of California the sum of **$1700 per day,** for each and every calendar day's delay in finishing the work in excess of the number of working days prescribed above.

## 0.05 (BLANK)

## 0.052 DIFFERING SITE CONDITIONS

Attention is directed to Section 2-1.045, "Differing Site Conditions," of the General Conditions.

During the progress of the work, if subsurface or latent conditions are encountered at the site differing materially from those indicated in the "Materials Information," log of test borings, other geotechnical data obtained by the Department's investigation of subsurface conditions, or an examination of the conditions above ground at the site, the party discovering those conditions shall promptly notify the other party in writing of the specific differing conditions before they are disturbed and before the affected work is performed.

The Contractor will be allowed 15 days from the notification of the Engineer's determination of whether or not an adjustment of the contract is warranted, in which to file a notice of potential claim in conformance with the provisions of Section 7-1.03, "Notice of Potential Claim," of the General Conditions and as specified herein; otherwise the decision of the Engineer shall be deemed to have been accepted by the Contractor as correct. The notice of potential claim shall set forth in what respects the Contractor's position differs from the Engineer's determination and provide any additional information obtained by the Contractor, including but not limited to additional geotechnical data. The notice of potential claim shall be accompanied by the Contractor's certification that the following were made in preparation of the bid: a review of the

Contract No. 02-366704

48

# Exhibit
# C

Bidder's DBE Info & Good Faith Efforts
(01-17-02) Page 2 of 3

# DBE INFORMATION
# GOOD FAITH EFFORTS

Low, second low and third low bidders shall submit the following information to document adequate good faith efforts. Bidders should submit the following information even if the CALTRANS BIDDER - DBE INFORMATION form indicates that the bidder has met the DBE goal. This will protect the bidder's eligibility for award of the contract if Caltrans determines that the bidder failed to meet the goal for various reasons, e.g., a DBE firm was not certified at bid opening, or the bidder made a mathematical error.

Submittal of only the CALTRANS BIDDER - DBE INFORMATION form may not provide sufficient documentation to demonstrate that an adequate good faith effort was made.

The following items are listed in the Section entitled "Submission of DBE Information" of the Special Provisions:

A.   The names and dates of each publication in which a request for DBE participation for this project was placed by the bidder (please attach copies of advertisements or proofs of publication):

| Publications | Dates of Advertisement |
|---|---|
| CONSTRUCTION UPDATE | 5/30/02, 6/6/02 |
| MINORITY BIDDERS BULLETIN | 5/27/02, 6/3/02 |
| SHASTA BUILDERS EXCHANGE | 5/31/02 |

B.   The names and dates of written notices sent to certified DBEs soliciting bids for this project and the dates and methods used for following up initial solicitations to determine with certainty whether the DBEs were interested (please attach copies of solicitations, telephone records, fax confirmations, etc.):

| Names of DBEs Solicited | Date of Solicitation | Follow Up Methods and Dates |
|---|---|---|
| see attached listing | | |

C.   The items of work which the bidder made available to DBE firms, including, where appropriate, any breaking down of the contract work items (including those items normally performed by the bidder with its own forces) into economically feasible units to facilitate DBE participation. It is the bidder's responsibility to demonstrate that sufficient work to facilitate DBE participation was made available to DBE firms.

Portions of the Work:

ASPHALT ROADWAY EXCAVATION, BUILDING CONSTRUCTION, CARPENTRY DRYWALL, CABINETRY, ROOFING, PLUMBING

Breakdown of Portions of the Work:

Contract No. 02-366704
14

Bidder's DBE Info & Good Faith Efforts
(01-17-02) Page 3 of 3

D. The names, addresses and phone numbers of rejected DBE firms, the reasons for the bidder's rejection of the DBEs, and the firms selected for that work (please attach copies of quotes from the firms involved):

Names, addresses and phone numbers of rejected DBEs and the reasons for the bidder's rejection of the DBEs:

WE RECEIVED NO INTEREST/NO RESPONSE FROM DBE'S TO OUR ADVERTISEMENTS AND SOLICITATIONS.

*FAULTS STATEMENT*

*SEE ENTERR(...)*
*DOCUME(...)*

Names, addresses and phone numbers of firms selected for the work above:

E. Efforts made to assist interested DBEs in obtaining bonding, lines of credit or insurance, and any technical assistance or information related to the plans, specifications and requirements for the work which was provided to DBEs:

N/A

F. Efforts made to assist interested DBEs in obtaining necessary equipment, supplies, materials, or related assistance or services, excluding supplies and equipment the DBE subcontractor purchases or leases from the prime contractor or its affiliate:

N/A

G. The names of agencies, organizations or groups contacted to provide assistance in contacting, recruiting and using DBE firms (please attach copies of requests to agencies and any responses received, i.e., lists, Internet page download, etc.).

| Name of Agency/Organization | Method/Date of Contact | Results |
|---|---|---|
| TRIAKIAL MANAGEMENT SERVICES | FAX'D 5/24/02 | 13-PAGE LISTING OF CANVASSED AND UNCANVASSED DBE'S |

H. Any additional data to support a demonstration of good faith efforts:

**NOTE:** USE ADDITIONAL SHEETS OF PAPER IF NECESSARY.

Contract No. 02-366704
15

# Exhibit D

To:    MEMORANDUM TO FILE                     Date: 06/26/02
       PROJECT NO. 02-366704
       MINOR B NO.
       SERVICE CONTRACT NO.
       BID OPENING DATE: 06/18/02
       BIDDER: TIMBERWORKS

From:  DEPARTMENT OF TRANSPORTATION
       Civil Rights – Contract Evaluation Unit

Subject:  Evaluation of Good Faith Effort:
          Type of Work: RECONSTRUCT SCALE HOUSE

The Department established a Disadvantaged Business Enterprise (DBE) goal of 5.0 % for this project. The contractor achieved a participation of 0.0% The Department's evaluation of the low bidder's good faith efforts is based on the "Guidance Concerning Good Faith Efforts" contained in 49 CFR Part 26. The following efforts of the low bidder were reviewed to determine if the contractor demonstrated that a good faith effort to meet the goal was made.

A) The names and dates of each publication in which a request for DBE participation for this project was placed by the bidder (please attach copies of advertisements or proofs of publication):

| CONSTRUCTION UP-DATE | 05/30/03  and  06/06/02 |
|---|---|
| MINORITY BIDDERS BULLETIN | 05/27/02  and  06/03/02 |
| SHASTA BUILDERS EXCHANGE | 05/31/02 |

**The low bidder provided copies of these ads demonstrating the bidder's good faith effort to contact and utilize DBEs.**

B) The names and dates of written notices sent to certified DBEs soliciting bids for this project and the dates and methods used for following up initial solicitations to determine with certainty whether the DBEs were interested (please attach copies of solicitations, telephone records, fax confirmations, etc.):

The low bidder, using a DBE referral list obtained from Triaxial, identified twenty-one firms on May 25, 2002. Two firms on this listing (McCullough Construction and North Star Construction) were not certified at the time of bid. The Contract Evaluation Unit conducted a random telephone survey of seven of these firms. The chart below displays the results of the survey.

| Firm Name | Firm Solicited |
|---|---|
| Santos Excavating | Yes |
| S. D. Carmack | Yes |
| Ron Hale Construction. | Yes |
| Burke Construction. | Yes |
| Vintage Paving | Not sure |
| Clemens Brothers | Not sure |
| Barber Construction. | No |

C) The items of work which the bidder made available to DBE firms, including The names addresses and phone numbers of rejected firms, the reasons for the bidder's rejection of the DBEs, and the firms selected for that work (please attach copies of quotes from the firms involved): where appropriate, any breaking down of the contract work items (including those items normally performed by the bidder with its own forces) into economically feasible units to facilitate DBE participation.  It is the bidder's responsibility to demonstrate that sufficient work to facilitate DBE participation was made available to DBE firms.

The low bidder was ask to provide the Contract Evaluation Unit a breakdown of the work items made available to DBEs: Asphalt, roadway excavation, building construction, carpentry drywall, cabinetry, roofing and plumbing were the items. The low bidder was asked to cost out these items.  The total cost of these items is $194,000 or 23.28% of the bid amount.
The low bidder made sufficient work available to DBEs to meet the participation goal 5.0%.

D) The names, addresses and phone numbers of rejected DBE firms, the reason for the bidder's rejection of the DBEs and the firms selected for that work ( please attach copies of quotes from the firms involved):

The low bidder provided a notated listing of solicited DBEs which demonstates that DBEs were either not interested in bidding this project or simply did not respond to the solicitation request.

E) Efforts made to assist interested DBEs in obtaining bonding, lines of credit, or insurance, and any technical assistance or information related to the plans, specifications and requirements for the work which was provided to DBEs:

The low bidder's contact person, Jennifer Knight stated that her firms N/A response (Not Applicable) to this item (E) and the following item (F) was an attempt to respond to the fact that no DBEs submitted quotes to the bidder for this project. This fact negated the low bidder's ability to offer assistance of any kind. However it must be noted that the bidder advertised and solicited this project allowing time for DBEs to submit bids and/or request the plans and specifications for this project . The low bidder's solicitation letter included this statement " We are an Equal Opportunity Employer and intend to seriously negotiate with qualified DBE subcontractors and suppliers for project participation"

## SUMMARY OF REASONS FOR APPROVAL OR REJECTIONS:

The Low Bidder advertised for DBE participation on this project. The low provided information to show that DBEs were solicited allowing time to submit bids and/or request the plans and specifications for this project.

The bidder made sufficient work available to DBEs on this project the total value of this work was $194,000, this dollar amount represents 23.28% of the bid amount. The participation goal established for this project was 5.0%.

The low bidder made sufficient work available to meet the participation goal for this project.

## FINDING OF THE DEPARTMENT OF TRANSPORTATION:

The Department of Transportation, Civil Rights Program, finds that the low bidder has demonstrated a good faith effort for the reasons cited in this evaluation.

_____
Ron Kellum
Contract Analyst

_____
Samuel S. Ortega
Contract Evaluation Manager

# Exhibit
# E



**ENGINEERING
BUILDING
CONTRACTOR**

™

LIC. NO. 667297

14771 WONDERLAND BLVD.  REDDING. CA 96003  (530) 275-2779

June 21,2002

Via Fax / us mail
(916) 227-6282

Department Of Transportation
Office Engineer
1120 N Street, Rm. 0200 MS-26
Sacramento, Ca. 95814

Subject:      02-sis-5-R11.6 Truck Inspection Facility
              Contract No. 02-366704

Reference:    Bid Protest of DBE participation or
              Good Faith demonstration

Gentlemen:

    My review of the bid summary and list of subcontractors
indicates that the lowest bidder Timberworks did not comply
with the contract documents for DBE participation.

    It appears that Timberworks is subcontracting most all
of the work and to the best of my knowledge none of the listed
subcontractors is DBE certified.

    Although we found little DBE interest in this project
we did set aside work we normally due ourselfs in order to
provide DBE participation as required by specifications

    Enterra Remediation, Inc a certified DBE/WBE contractor
submitted a bid proposal to all bidding prime contractors for
construction signage and traffic control which we used to try
an obtain the specified DBE goals.

    If the Department of Transportation awards this contract
to Timberworks they will be denying Enterra Remediation, Inc
the opportunity to participate in this project and setting a
precedence that the good faith efforts required in the project
solicitation are meaningless.

Sincerely,
M.D. Stierli

MDS Construction

# Exhibit
# F



## ENGINEERING
## BUILDING
## CONTRACTOR
**LIC. NO. 667297**

14771 WONDERLAND BLVD.  REDDING, CA 96003  (530) 275-2779

July 13,2002                                    Via Fax / US Mail
                                                (916) 227-6282

Department Of Transportation
Office Engineer
1120 N Street Rm. 0200 MS-26

Subject:        02-sis-5-R11.6 Truck Inspection Facility
                Contract No. 02-366704

Reference:      Bid Protest DBE Participation
                A) Reconsideration Of Determination

Gentlemen:

    It is our belief that the departments determination of DBE
participation and Good Faith demonstration was based upon incomplete
documentation and that pertinent documents and information was
withheld or unknown to them.

    Herewith please find exhibit-A letter from Enterra Remediation
acknowledging there interest to Timberworks to participate in subject
project. Exhibit-B is a copy of Timberworks invitation to bid which
clearly states their intent to utilize DBE participation. Exhibit-C
is a copy of EnTerra,s fax journal confirming both MDS and Timberworks
were sent cost proposals for this project.

    We received two traffic control proposals and made our evaluation
based on a 2-person flagging crew. Exhibit-D Traffic Solutions
quoted $1,000.00 per/day, Exhibit-E EnTerra for the same 2-person
crew quoted $800.00 per/day. Although we could have saved money by
providing two flaggers ourselfs we opted for DBE participation where
as Timberworks took the savings.

    We believe the above documents clearly show that Timberworks in
fact did not demonstrate Good faith Effort for DBE participation
when it was available.

    Thank you for your review and reconsideration.

Sincerely,

M.D. Stierli

MDS Construction

**EnTerra Remediation, Inc.**
P O Box 659
Willits, CA 95490
(707) 459-3202     FAX (707) 459-0404
CA. LIC. No. 668895

July 12, 2002

Mike Stierli
Engineering Building Contractor
14771 Wonderland Blvd.
Redding, CA 96003

Dear Mr. Stierli:

Per your request I am FAXing to you our transmittal sheet dated June 21, 2002, as well as the Invitation to Bid received from Timberworks dated May 28, 2002.

As you can see we did mark the letter Yes, We Are Interested. I remember we had difficulty FAXing the Invitation to Bid back because the area code had changed from what was listed on the letterhead. However, the area code was correct on the plan holders list as you can see.

I do hope CalTrans can get this matter straightened out for you. On the Internet there has been several articles about DBE participation and the lack thereof by Primes. J. F. Shey, it is my understanding, lost a rather large job because they did not have DBE participation. Granite Construction also just lost an award. I talked in length to CalTrans one day when they called to ask about one of these jobs and whether we had sent in a bid, or rather, if a good faith effort had been made. CalTrans indicated that they were very serious about Prime Contractors following the requirements.

This is all the information I have. I have checked for any other transmittal reports or notes. I thank you for having listed us.

Sincerely,

Amanda Johnson

 

**TIMBERWORKS**

Incorporated as
SHASTA
SERVICES, INC.
General Building Contractors
General Engineering Contractors (530)

1125 S. Mt. Shasta Blvd.
P.O. Box 1240
Mt. Shasta, CA 96067
-916/ 926-4063
-916/ 926-2118 Fax

May 28, 2002

## INVITATION TO BID

Enterra Remediation, Inc.
P.O. Box 659
Willits, CA 95490

We are seeking subcontract and materials bids from qualified DBE's for the following
project:

Project:   Truck Scales and Office Building @ Dunsmuir Grade (CalTrans) *02-364704*

Location:   Dunsmuir, CA

Bid Date:   June 18, 2002

Contact:   Buzz Knight

Plans and specifications are available for review at Timberworks at the address shown
above, or you may contact our office for mail or FAX service.

We are an Equal Opportunity Employer and intend to seriously negotiate with qualified
DBE subcontractors and suppliers for project participation.

Please indicate if you are interested in bidding on this project by FAXing your response
to this invitation to: 530) 926-2118.  Thank you for your consideration.

☑ YES, WE ARE INTERESTED
☐ NO, WE ARE NOT INTERESTED
☐ INFORMATION REQUIRED _____



Jun. 21 2002 02:11PM

YOUR LOGO     :ENTERRA
YOUR FAX NO. :7074598404

| NO. | OTHER FACSIMILE | START TIME | USAGE TIME | MODE | PAGES | RESULT |
|-----|-----------------|-----------|-----------|------|-------|--------|
| 01 | 15302469940 | Jun.10 09:05AM | 01'11 | SND | 03 | OK |
| 02 | 19166051459 | Jun.10 09:07AM | 01'10 | SND | 03 | OK |
| 03 | 15302451016 | Jun.10 09:08AM | 01'43 | SND | 03 | OK |
| 04 | 15302451016 | Jun.10 09:11AM | 01'44 | SND | 03 | OK |
| 05 | 17077460936 | Jun.10 09:13AM | 01'12 | SND | 03 | OK |
| 06 | 16263903690 | Jun.10 09:15AM | 01'11 | SND | 03 | OK |
| 07 | 19102543131 | Jun.10 09:17AM | 01'15 | SND | 03 | OK |
| 08 | 15416641105 | Jun.10 09:19AM | 00'42 | SND | 00 | OTHER FAX NOT RESPOND |
| 09 | 15416641105 | Jun.10 09:20AM | 01'19 | SND | 03 | OK |
| 10 | <FAX # NOT AVAIL.> | Jun.11 02:23PM | 00'46 | RCV | 00 | OTHER FAX NOT RESPOND |
| 11 | <FAX # NOT AVAIL.> | Jun.11 03:49PM | 00'47 | RCV | 00 | OTHER FAX NOT RESPOND |
| 12 | <FAX # NOT AVAIL.> | Jun.13 08:34AM | 00'47 | RCV | 00 | OTHER FAX NOT RESPOND |
| 13 | <FAX # NOT AVAIL.> | Jun.13 08:39AM | 00'47 | RCV | 00 | OTHER FAX NOT RESPOND |
| 14 | <FAX # NOT AVAIL.> | Jun.13 08:43AM | 00'47 | RCV | 00 | OTHER FAX NOT RESPOND |
| 15 | <FAX # NOT AVAIL.> | Jun.17 12:49PM | 02'47 | RCV | 00 | OTHER FAX NOT RESPOND |
| 16 | <FAX # NOT AVAIL.> | Jun.17 04:20PM | 02'47 | RCV | 00 | OTHER FAX NOT RESPOND |
| 17 | <FAX # NOT AVAIL.> | Jun.17 04:22PM | 00'47 | RCV | 00 | OTHER FAX NOT RESPOND |
| 18 | 15302462360 | Jun.18 08:24AM | 01'10 | SND | 03 | OK |
| 19 | 15302759483 | Jun.18 08:26AM | 01'08 | SND | 03 | OK |
| 20 | 15302750706 | Jun.18 08:30AM | 02'20 | SND | 03 | OK |
| 21 | 17072265151 | Jun.19 09:31AM | 01'21 | SND | 03 | OK |
| 22 | 15309262118 | Jun.18 08:34AM | 01'10 | SND | 03 | OK |
| 23 | 15302236320 | Jun.18 08:35AM | 00'06 | SND | 00 | PRESSED THE STOP KEY |
| 24 | 15309262118 | Jun.18 08:36AM | 01'13 | SND | 03 | OK |
| 25 | 17075594673 | Jun.18 08:41AM | 01'13 | SND | 03 | OK |
| 26 | 15302440462 | Jun.18 08:43AM | 01'07 | SND | 03 | OK |
| 27 | 15416641105 | Jun.18 08:44AM | 01'09 | SND | 03 | OK |
| 28 | 15302266005 | Jun.18 08:46AM | 01'16 | SND | 03 | OK |
| 29 | 19256919919 | Jun.18 08:50AM | 01'15 | SND | 03 | OK |
| 30 | 17074652904 | Jun.18 08:53AM | 01'09 | SND | 03 | OK |

FOR FAX ADVANTAGE ASSISTANCE, PLEASE CALL 1-800-HELP-FAX (435-7329).

# Exhibit
# G



# DEPARTMENT OF TRANSPORTATION

DIVISION OF ENGINEERING SERVICES
OFFICE ENGINEER, MS 43
1727 30TH STREET
SACRAMENTO, CA 95816
P. O. BOX 168041
SACRAMENTO, CA 95816-8041
PHONE  (916) 227-6300
FAX  (916) 227-6151

*Flex your power!*
*Be energy efficient!*

<u>FACSIMILE (530) 275-9483</u>

July 25, 2002

Mr. M. D. Stierli                    02-366704
MDS Construction                     02-SIS-5-R7.2
14771 Wonderland Blvd.               B.O. 06/18/02
Redding, CA 96003

Dear Mr. Stierli:

The Department received letters from your firm dated June 27, 2002 and July 13, 2002 regarding the above-referenced project. The basis of your protest is that the low bidder is not performing 50% of the work with its own forces and did not demonstrate a good faith effort for DBE participation.

In your letter you referenced Standard Specifications Section 8-1.01 and indicated that you believed the low bidder was not in compliance with this specification. On this specific project all subcontracting requirements are addressed under Section 0.08, Subcontracting, of the Special Provisions for this project. Standard Specifications Section 8-1.01 does not apply to this contract.

In accordance with State and federal law, Caltrans must award this contract to the lowest responsible bidder which complies with all the applicable requirements, including either meeting the DBE goal or demonstrating a good faith effort to meet the DBE goal established for this contract. The Caltrans Civil Rights Program has determined that Timberworks made a good faith effort to meet the DBE goal established for this contract.

Caltrans is proceeding to award this project to Timberworks. If you have any questions, please call Jeff Reeds at (916) 227-6285.

Sincerely,

JOHN C. McMILLAN
Deputy Division Chief
Office Engineer

*"Caltrans improves mobility across California"*

# Exhibit
# H

**ENGINEERING
BUILDING
CONTRACTOR**

LIC. NO. 667297

14771 WONDERLAND BLVD.  REDDING, CA 96003  (530) 275-2779

July 26, 2002

Via Fax / US Mail
(916) 227-6151

Department Of Transportation
Office Engineer, MS-43
PO Box 168041
Sacramento, Ca. 95816-8041

Att:   John C. McMillan / Jeff Reeds

Subject:        02-sis-5-R11.6 Truck Inspection Facility
                Contract No. 02-366704

Reference:      Appeal of Caltrans Civil Rights Program
                determination that Timberworks made a Goodfaith
                effort to meet DBE goals

Gentlemen:

    In response to your letter Dated July 25, 2002 we believe that
Timberworks did not in fact make a Goodfaith Effort as previously
stated in our letter dated July 13, 2002. It is our contention that
you cannot claim to have set aside DBE work, solicit for that work,
and then deny the DBE low bidder the oportunity to perform that
work and alledge to have made a Goodfaith Effort.

    It is our belief that Caltrans Civil Rights program has flawed
in this determination as it sets a precedence whereby all that is
required to meet the Goodfaith Effort is simply solicit and advertise.

    We are bidding on the Chester Maintenance Project which has a
3% DVBE goal and we are at a loss as to complying with the goals or
attaining the lowest possible bid as Timberworks did.

    We therefore ask that a Division Chief review this matter and
that we be provided a copy of the Caltrans Civil Rights determination
so that we can obtain a second opinion from the Federal Civil Rights
Program.

Sincerely,


M.D. Stierli

MDS Construction

# Exhibit
# I



| | **Tillie Boranian** | To: Sam Ortega/HQ/Caltrans/CAGov |
| | 08/01/02 02:01 PM | cc: |
| | | cc: |
| | | Subject: Contract 02-366704 |

As discussed 7/31/02 there is a protest on this contract. The 2nd low bidder is claiming that the low bidder Timberworks did not make a good faith effort. Their claim is based on the fact that item No. D of the good faith effort asked the low bidder to list any rejected DBEs and the name of the firm they used in their place. The low bidder's response was "we received no interest/no response from DBEs to our advertisements and solicitation." The 2nd low included a letter of solicitation, quote and fax confirmation from a DBE firm EnTerra. Remediation.

I called the DBE and confirmed with Ananda Johnson that they had faxed quotes to all plan holders.

I called the low bidder, spoke to Stacy Yousie the contact person for the low bidder to asked why the had failed to list EnTerra as a rejcted DBE. Ms. Yousie explained that they sent their bid to a courier service about three days prior to bid opening. The good faith documentation was included and filed at the bid opening. Ms. Yousie is faxing me a declaration explaining all of the above and she will fax the over night receipt .

Tillie Boranian
Civil Rights - MS79
1823 14th St.
Sacramento, CA. 95814
Phone (916) 324-8377
Fax (916) 324-8435

# Exhibit
# J



1125 S. Mt. Shasta Blvd.
Post Office Box 1240
Mt. Shasta, CA 96067

(530) 926-4093
Fax (530) 926-2118

knight@snowcrest.net

# TIMBERWORKS

*General Building & Engineering Contractors*
*DESIGN • BUILD • CONSULTING*

CA Lic. #449510 A & B
Shasta Services, Inc. DBA

# Fax

| | | | | |
|---|---|---|---|---|
| **Company:** | CalTrans | **From:** | Jennifer Knight, Vice-president | |
| **Attention:** | Tillie Boranian | **Pages:** | 2 | |
| **Fax:** | 916) 324-8435 | **Date:** | August 1, 2002 | |
| **Re:** | Contract #02-366704 | **CC:** | | |

☐ Urgent    ☐ For Review    ☐ Please Comment    ☐ Please Reply    ☐ Please Recycle

● **Message:**

Ms. Boranian:

Please accept this correspondence as documentation for the events concerning the submittal of our bid packet for the above-referenced project.

Due to the distance of our office from Sacramento, we opted to utilize a bid courier service (State Capital Bid Service) to deliver our bid to the DOT office in Sacramento at the time specified in the bid instructions. In order to ensure that the courier had our bid packet in hand prior to the bid date of June 18, 2002, we sent our entire bid packet, as complete as was possible, to the courier on June 14, 2002 by means of Federal Express. We then communicated our final bid number (dollars) to the courier via telephone on June 18. Enclosed is a copy of the billing detail from Federal Express, as well as our billing from the courier for their services for your records.

At the time we sent the bid packet to the courier on June 14, we had received no affirmative responses to our Invitations to Bid from Disadvantaged Business Enterprises.

Thank you for your assistance in this matter.

Sincerely,

*Jennifer Knight*

# Exhibit
# K

# DEPARTMENT OF TRANSPORTATION
DIVISION OF ENGINEERING SERVICES
OFFICE ENGINEER, MS 43
1727 30TH STREET
SACRAMENTO, CA  95816
P. O. BOX 168041
SACRAMENTO, CA  95816-8041
PHONE  (916) 227-6300
FAX  (916) 227-6151


*Flex your power!*
*Be energy efficient!*

FACSIMILE (530) 275-9483

August 6, 2002

Mr. M. D. Stierli                          02-366704
MDS Construction                           02-Sis-5-R11.6
14771 Wonderland Blvd.                     B.O. 06/18/02
Redding, CA 96003

Dear Mr. Stierli:

On July 25, 2002 the Department responded to your bid protest letters dated June 27, 2002 and July 13, 2002.  The Department subsequently received a letter from your firm dated July 26, 2002 reiterating your belief that Timberworks did not demonstrate a good faith effort to meet the DBE goal.

The Department's Civil Rights Program investigated all of the information provided by your company and has re-confirmed its original conclusion that Timberworks made a good faith effort to meet the DBE goal.  This is the Department's final decision on the issue.

In accordance with State and federal law, Caltrans must award this contract to the lowest responsible bidder which complies with all the applicable requirements, including either meeting the DBE goal or demonstrating a good faith effort to meet the DBE goal established for this contract.

Because the low bidder met all of the applicable requirements, the Department has awarded this project to Timberworks.

Sincerely,

JOHN C. McMILLAN
Deputy Division Chief
Office Engineer

*"Caltrans improves mobility across California"*

# Exhibit
# L

SWPPP

State of California
Department of Transportation
CAS278
Statement of Ongoing Contracts

As of  01/20/04

Page 5
02/03/04

District  02

| Contract Fed Aid Pgm Code    SWPPP | Description Type Of Work | Contractor | Resident Engineer | Bid + CCOs Comp To date This Month | Awarded Approved Est Comp Accepted | %Time % Work Message |
|---|---|---|---|---|---|---|
| 02-SHA-299-95.1/99.4<br>02-310204<br>STP- ( )<br>P-P299-(138)<br><br>HA22<br>SWPPP | IN SHASTA AND LASSEN COUNTIES IN AND NEAR MCARTHUR FROM 0.3 KM WEST OF MCARTHUR GLENBURN ROAD TO 1.3 KM EAST OF LASSEN COUNTY ROAD<br><br>ROADWAY REHABILITATION | J F SHEA CO INC<br>P O BOX 494519<br>REDDING CA<br>96049519<br><br>(530)246-4292 | REGINATO, ROBERT<br>4300 CATERPILLAR ROAD<br>REDDING, CA 96003<br><br>(530)225-3284 | $10,186,373<br>$988,789<br>$0 | 07/10/03<br>07/24/03<br>10/20/04 | 6%<br>10%<br>SUSPENDED |
| 02-SHA-5705-/0<br>02-350604<br><br>HA12 | IN SHASTA COUNTY IN BURNEY AT THE BURNEY MAINTENANCE FACILITY<br><br>CONSTRUCT VARIOUS BUILDINGS | M D S CONSTRUCTION<br>14771 WONDERLAND BLVD<br>REDDING CA 96003<br><br>(530)275-2779 | BRACE, CHRIS<br>4300 CATERPILLAR RD<br>REDDING, CA 96003<br><br>(530)225-3338 | $4,244,604<br>$3,365,819<br>$36,992 | 09/19/02<br>09/24/02<br>01/05/05 | 45%<br>79% |
| 02-SIS-5-5-7.2/0<br>02-366704<br>ACIM-005 -(158) | IN SISKIYOU COUNTY NEAR MOUNT SHASTA AT THE DUNSMUIR GRADE TRUCK INSPECTION FACILITY | TIMBERWORKS<br>P O BOX 1240<br>MOUNT SHASTA CA 96067<br><br>(530)235-0720 | ELKINS, STEVE<br>1625 MOTT ROAD<br>MT SHASTA, CA 96067 | $1,036,498<br>$1,036,498<br>$0 | 07/26/02<br>08/09/02<br>12/30/03<br>12/31/03 | 100%<br>100%<br>OVER RUN |

# Exhibit M

## BEST BEST & KRIEGER LLP

A CALIFORNIA LIMITED LIABILITY PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

| | | |
|---|---|---|
| RIVERSIDE | **LAWYERS** | ONTARIO |
| (909) 686-1450 | 400 CAPITOL MALL, SUITE 1650 | (909) 989-8584 |
| | SACRAMENTO, CALIFORNIA 95814 | |
| INDIAN WELLS | (916) 325-4000 | SAN DIEGO |
| (760) 568-2611 | (916) 325-4010 FAX | (619) 525-1300 |
| | BBKLAW.COM | |
| | | ORANGE COUNTY |
| | | (714) 939-5940 |

PAUL F. DAUER
PFDAUER@BBKLAW.COM

September 13, 2002

**VIA FACSIMILE & U.S. MAIL**

Dr. Jeremy S. Wu
Office of Civil Rights
United States Department of Transportation
400 Seventh Street, S.W.
Washington, D.C., 20005

> Re: Protest of Contract No. 02-366704, 02-Sis-5-R11.6
> Federal Aid Project ACIM-005-9(158)E

Dear Dr. Wu:

This firm represents MDS Construction, Inc. (MDS), with regard to the above-referenced Federal Aid Project matter. This letter and its attachments constitute a protest by MDS with regard to the award of this contract by the State of California Department of Transportation (CalTrans) to Shasta Services, Inc., dba Timberworks (Timberworks). MDS is an interested party because if this protest is sustained, and if CalTrans is thereby required to re-award the contract based on the bids submitted, MDS will be deemed the lowest responsible bidder and therefore would be awarded this contract.

As described in detail below, MDS protests this action because (1) Timberworks, the current awardee, violated federal law and regulations by failing to make a good faith effort to comply with federal laws and regulations related to disadvantaged business establishment (DBE) participation goals, 49 C.F.R. Part 26, Appendix A, and (2) because the procedure followed by CalTrans in denying MDS's protest of the proposed award of this contract was arbitrary and capricious and failed to meet minimum standards of due process.

I.     Factual Background

CalTrans published its Notice to Contractors, Instructions to Bidders, General Conditions and Special Provisions for Building Adjacent to State Highway in Siskiyou County Near Mount Shasta at the Dunsmuir Grade Truck Inspection Facility (Project Notice) on May 20, 2002, with bids scheduled to be opened at 2:00 p.m. on June 18, 2002. (A copy of the relevant portion of the Project Notice is attached hereto as Exhibit "A.") The Project Notice states that "[t]his projects has a goal of 5 percent disadvantaged business enterprise (DBE) participation" and that CalTrans "will affirmatively insure that in any contract entered into pursuant to this

Dr. Jeremy S. Wu
September 12, 2002
Page 2

advertisement, disadvantaged business enterprises will be afforded full opportunity to submit
bids in response to this invitation." The Project Notice further provides that the project is subject
to Title 49, Code of Federal Regulations Part 26, "Participation by Disadvantaged Business
Enterprise in Department of Transportation Financial Assistance Programs," and incorporates
those regulations by reference. The Project Notice states that meeting the goal for DBE
participation "is a condition for being eligible for award of contract."

The bids were opened as scheduled on June 18, 2002, and the contract was proposed to be
awarded to Timberworks, the low bidder. Because of Timberworks' failure to meet the goal of
5% DBE participation or to demonstrate good faith efforts to meet that goal, MDS timely
submitted a protest of the proposed award to CalTrans by letters dated June 21, 2002 and July 3,
2002. CalTrans dismissed the protest on July 25, finding that Timberworks had demonstrated
good faith efforts to meet the DBE goal and reiterating its intent to award the contract to
Timberworks. MDS sought to appeal this dismissal by letter dated July 26, but this appeal was
rejected by CalTrans by letter dated August 6, 2002, apparently without further considering this
matter. The August 6 letter states that CalTrans has awarded the project to Timberworks.
(Copies of this correspondence are attached hereto as Exhibits "B" through "F," respectively.)

II.    Timberworks Did Not Engage in Good Faith Efforts to Obtain Five Percent
       DBE Participation

Under DBE requirements, if a bid proposal does not include sufficient DBE participation
to meet the stated goal, the bidder must demonstrate that it made a "good faith effort" to meet
that goal. As provided in Title 49, Code of Federal Regulations, Part 26, at Appendix A,
"Guidance Concerning Good Faith Efforts," this means that the bidder must show that it "took all
necessary and reasonable steps to achieve a DBE goal," and that its efforts were "those that one
could reasonably expect a bidder to take if the bidder were actively and aggressively trying to
obtain DBE participation sufficient to meet the DBE contract goal. Mere *pro forma* efforts are
not good faith efforts . . . ." (Emphases added.)

Because Timberworks' bid proposal included no participation by DBEs, it could not be
deemed responsive or eligible for award unless Timberworks adequately demonstrated its good
faith efforts - as defined above - to secure DBE participation. Timberworks purported to set forth
these efforts in its "DBE Information & Good Faith Efforts" documentation (DBE
Documentation) (a copy of which is attached hereto as Exhibit "F"), submitted with its bid
proposal. This document contains Timberworks' representations regarding its advertising to
DBEs for bid solicitations and affirmatively recites that Timberworks "received no interest/no
response from DBEs to [its] advertisements and solicitations." Based on this representation, and
the other representations made therein, CalTrans approved Timberworks' efforts as sufficient to
satisfy the applicable requirements. (Attached as Exhibit "G".)

However, notwithstanding Timberworks' representation to the contrary, at the time that
Timberworks' bid was submitted to CalTrans, it had received at least two responses from

Dr. Jeremy S. Wu
September 12, 2002
Page 3

qualified DBEs for subcontracting work on this project. EnTerra Remediation, Inc. (EnTerra), a certified DBE contractor, submitted to Timberworks a bid proposal for construction signage and traffic control, and Terry Pilkington Construction (Pilkington), a certified DBE, submitted to Timberworks a bid proposal for concrete work.[1] (Attached as Exhibits "H" through "I".) Both of these proposals were submitted to and received by Timberworks prior to the submission of their bid to CalTrans, but neither bid was disclosed in the DBE Documentation, nor was any explanation given for the rejection of these bids, as required by federal regulations and by the Project Notice (at § 0.026).

When questioned about this discrepancy by CalTrans, Timberworks relied on the fact that it sent its entire bid packet, including the DBE Documentation, to a courier on June 14, four days before the bids were due and before it received the bid proposals from the DBEs. (See facsimile cover sheet from Timberworks to CalTrans dated August 1, 2002, a copy of which is attached hereto as Exhibit "J.") Timberworks apparently believes that its "good faith effort" obligation ended on June 14, when it shipped out its initial bid to the courier. This is apparently so notwithstanding the fact that the "Invitation to Bid" that it sent to DBEs, and upon which DBEs were entitled to rely, listed June 18 as the bid date, instructed that responses be submitted by facsimile, and stated that Timberworks intended to "seriously negotiate with qualified DBE subcontractors and suppliers for program participation." Timberworks' Invitation to Bid said nothing about submitting bids four days in advance to allow for shipping or courier delivery. Timberworks cannot now claim that these bid solicitations were somehow "untimely."[2] Instead, by applying an artificial June 14 cut-off for bid solicitations (apparently applicable only to DBEs), without regard to the June 18 deadline noted in its Invitation to Bid, Timberworks entirely failed to allow DBEs sufficient time to respond to the bid solicitation as required by Section IV.A. of Appendix A to 49 C.F.R. Part 26.

Timberworks compounded the misrepresentation that it had received no DBE responses, and further evidenced its lack of good faith in this matter, when, by that same facsimile cover sheet, it represented that its bid revisions on June 18 were limited to "our final bid number (dollars)." As shown on the Supplement to Proposal (a copy of which is attached hereto as Exhibit "J"), however, the changes communicated by Timberworks to its courier on June 18 included changes to three of its proposed subcontractors. Thus, Timberworks apparently

_____

[1] The Pilkington bid would have constituted over 5% DBE participation for this project. Thus, had Timberworks accepted Pilkington's timely bid solicitation, it would have satisfied the DBE participation goal.

[2] The language used by Timberworks is telling. In this facsimile cover sheet, while admitting that it communicated additional bid information to the courier by telephone on June 18, Timberworks states only that it "had received no affirmative responses "[a]t the time [Timberworks] sent the bid packet to the courier." It is noteworthy that Timberworks does not claim that it had not received any affirmative DBE responses by the time it communicated the subsequent bid information to the courier.

BEST BEST & KRIEGE. LLP

Dr. Jeremy S. Wu
September 12, 2002
Page 4

received at least five bid proposals from subcontractors after sending its bid to the courier. Three
of these bids were from non-DBEs and were incorporated into the proposal. The other two, from
DBEs, were not even disclosed by Timberworks in its proposal or its DBE Documentation. By
accepting bids from subcontractors, while ignoring the bids of the DBEs, Timberlands effectively
filed a false document with CalTrans, because it <u>knew</u> that the statements contained in the DBE
Documentation were not true and yet it let those statements remain while changing other
subcontractor information as suited its needs.

     The changes that would need to be made to the DBE Documentation are not onerous. All
that was required was that Timberworks would have to list the names, addresses and telephone
numbers of the rejected DBE firms, and provide the reasons for their rejection.[3] If Timberworks
truly had a good faith basis for rejecting these bids, then updating this information would have
been no more difficult than updating the subcontractor information that Timberworks <u>did</u> change
when it called the courier on June 18. Timberworks' failure to address the bids solicited by
DBEs is even more egregious in light of the fact that, even though the bid proposals were due on
June 18, Timberworks was not required to submit the DBE Documentation until the afternoon of
June 24, fully <u>six days</u> after it received the DBE bid solicitations. (See, Project Notice, § 0.026.)
This ongoing perpetuation of the false statements contained in the DBE Documentation should
not be overlooked.

     Timberworks' failure to even address the bids submitted by DBEs, particularly since they
had <u>six days</u> after bid opening in which to do so, falls well short of the federal requirement that it
take "all necessary and reasonable steps" and that it "actively and aggressively" try to obtain DBE
participation.[4] Whatever efforts it may have made to advertise or solicit DBE bids are
meaningless when it simply ignores those bids when they do come in. Timberworks' inclusion of
other subcontractors on the day the bids were due, while ignoring similarly situated bids from
DBEs, belies its lack of good faith and constitutes, at best, *pro forma* efforts. Such efforts are
insufficient. (See, e.g., *C.H. Barco Contracting Co. v. Florida Dep't of Transp.* (1986) 483
So.2d 796, 798 (discussing analogous Florida DBE regulations).)

---

    [3] By contrast, MDS incorporated the bid that it received from EnTerra on June 18 into its
bid proposal, notwithstanding the additional costs associated therewith. Timberworks, on the
other hand, ignored the bid and did not even admit to its receipt in its DBE Documentation. The
conduct of MDS, as a bidder, is a relevant factor in determining whether Timberworks engaged
in good faith efforts. (See, Appendix A to 49 C.F.R. Part 18.)

    [4] More than just failing to satisfy good faith efforts requirements, this false statement, on
the basis of which Timberworks was awarded the contract, may constitute a false claim under the
California False Claims Act for which Timberworks is liable for up to treble damages plus civil
monetary penalties. *See*, e.g., *Southern California Rapid Transit Dist. v. Superior Court*, 30 Cal.
App.4th 713 (1994).

LAW OFFICES OF
BEST BEST & KRIEGER LLP

Dr. Jeremy S. Wu
September 12, 2002
Page 5

Timberworks' failure to disclose its receipt of these bids raises serious questions as to the veracity of its other representations regarding any efforts to obtain DBE participation. Indeed, CalTrans' own "random telephone survey" of DBEs that Timberworks purports to have solicited for this work shows that only four of the seven firms contacted could confirm that they received the Timberworks solicitation, while one of the seven affirmatively and unequivocally stated that it did <u>not</u> receive any such solicitation. Notwithstanding this anomalous response, CalTrans approved Timberworks efforts as sufficient to satisfy the good faith efforts requirement, apparently without further investigation.

Since Timberworks did not engage in good faith efforts to secure DBE participation, as required by federal law, Timberworks' bid should be found to be materially non-responsive and the contract should be awarded to MDS as the lowest responsible bidder meeting specifications.

<u>CalTrans' Review of the MDS Bid Protest Was Arbitrary and Capricious and Failed to Meet the Minimum Standards of Due Process</u>

It is bad enough that the bidder is blowing off the DBE program, but CalTrans becomes a co-conspirator when it condones this conduct. CalTrans' apparent cursory review of this protest, which involved no follow-up with regard to the discrepancies noted in Timberworks' DBE Documentation and subsequent responses, and its failure to question Timberworks' DBE efforts when only four out of the seven DBEs contacted confirmed that they had received solicitations from Timberworks, did not comport with requirements of due process and resulted in an arbitrary and capricious denial of MDS's protest.

Indeed, CalTrans' actions in response to MDS's protest is part of a larger pattern of disregard for the DBE program that has been exhibited by CalTrans. CalTrans similarly turned a blind eye to discrepancies in representations made with regard to efforts to obtain DBE participation in a case that is now on appeal at the State of California Third District Court of Appeal in <u>Jaxson Enterprises v. State of California</u>, C038275. CalTrans' failure to investigate discrepancies in DBE Documentation, unless checked by the courts and by the federal funding agencies, will only lead to more and more abuse of and disregard for this system, as we have seen in the case at hand.

<u>The Award of this Project to Timberworks Should Be Withdrawn and the Contract Awarded to MDS</u>

Viewed as a whole, Timberworks' DBE results consist of <u>no</u> work being performed by DBEs, all bid solicitations received from DBEs being rejected without explanation or disclosure, false statements concerning the supposed lack of DBE response and questions raised as to the veracity of the remaining DBE information provided. At best, these facts indicate a nod and a wink toward DBE participation, but no real *bona fide* good faith effort to include DBEs in the work far less an "active and aggressive" attempt at participation. The DBE program and DBE participation goals are meaningless if they can be satisfied by advertising for solicitations without

LAW OFFICES OF
BEST BEST & KRIEGER LLP

Dr. Jeremy S. Wu
September 12, 2002
Page 6

requiring that responsive DBE bids be given serious consideration and, at the least, valid explanations for the failure to use those bids. Federal regulations and common notions of fair play and honest dealing require no less.

Any contract that CalTrans has entered or may enter with Timberworks as a result of this award is wholly void and unenforceable under California law. *See, e.g., Miller v. McKinnon* (1942) 20 Cal. 2d 83, 88 (a public entity's award of a contract outside of the entity's express authority is void and unenforceable). As a result, any payment made on the contract would be void and must be returned to the public entity. *Cal. Const., Article IV, section 17; Miller, supra.*[5] Further, when the General Accounting Office audits this federal aid contract post-completion, the fact that this contract was entered into in contravention of federal law would prevent CalTrans from using or being reimbursed by federal funds for this project.

Based on the above, and based on CalTrans' failure to follow bid protest procedures which comport with due process, MDS hereby requests that the United States Department of Transportation instruct CalTrans, the grantee of the federal aid that is funding this project, to withdraw its void award of the contract to Timberworks and to grant the award to MDS as the lowest responsible bidder meeting specifications.

Sincerely,

Thomas R. Gibson
for BEST BEST & KRIEGER LLP

SACRAMENTO\TRG\2103
Enclosures

cc:    Kenneth M. Mead, Inspector General, United States Department of Transportation

---

[5] Since knowledge of the conclusively requisite facts is imputed to State contractors, any request for payment under this void contract would constitute a false claim and would subject Timberworks to treble damages and civil monetary penalties. *See* fn. 4 *supra.*

# Exhibit N



**U.S. DEPARTMENT OF TRANSPORTATION**
FEDERAL HIGHWAY ADMINISTRATION
CALIFORNIA DIVISION
650 Capitol Mall, Suite 4-100
Sacramento, CA. 95814
April 16, 2004

**RECEIVED**

APR 1 9 2004

**BEST BEST & KRIEGER**

IN REPLY REFER TO
HDA-CA
File # 901
Document # S44920

Mr. Thomas Gibson
Best Best & Krieger LLP
400 Capitol Mall, Suite 1650
Sacramento, CA 95814

Dear Mr. Best:

The Federal Highway Administration (FHWA) has completed its investigation of the Disadvantaged Business Enterprise (DBE) Noncompliance Complaint and Office of Inspector General (OIG) Hotline Complaint 03IH-544-I-000 that you submitted on behalf of your client, Mr. M.D. Stierli of MDS Construction, Inc. This complaint alleges that Caltrans awarded a Federal-aid contract with a DBE goal (Caltrans Contract No. 02-366744, Federal Aid No. ACIM-005-9(158)E) to a bidder who failed to document adequate good faith efforts to meet the contract goal.

When a recipient has established a DBE contract goal, it must award the contract only to a bidder who makes good faith efforts to meet it. A bidder does this if it documents sufficient DBE participation to meet the goal or it documents that it made adequate good faith efforts to meet the goal. See 49 C.F.R. § 26.53(a). FHWA has concluded that Caltrans awarded the Federal-aid contract cited above to a bidder who failed to meet the contract goal or document adequate good faith efforts to meet it. The Report of Investigation for this complaint is enclosed.

Thank you for raising this issue. As a result of your client's complaint Caltrans will be implementing actions to ensure that this situation will not occur in the future. Further, FHWA will be examining good faith effort analyses done on contracts similar to the one in this case to uncover other opportunities to improve the good faith analysis process.

If you have any questions about the findings of our investigation, please call Lance Yokota, Civil Rights Program Manager at (916) 498-5012.

Sincerely,

For
Gene K. Fong
Division Administrator

Enclosure

source that cannot be identified in this report. The issue raised in all these
forums is essentially identical.

## V.    Allegations

The Complainant, MDS Construction, Inc., and the undisclosed OIG Hotline
complainant allege that the Respondent, the California Department of
Transportation, did not comply with the Disadvantaged Business Enterprise
(DBE) regulations when it determined that Timberworks demonstrated
adequate good faith efforts to obtain DBE participation on Federal-aid
Contract No. 02-366704 that has a five percent DBE goal despite the
following: Timberworks submitted no DBE participation with its bid, it
rejected two DBE bids without explanation or disclosure, and it made false
statements concerning the supposed lack of bids from DBEs.

## VI.    Position of Respondent

Initially, Olivia Fonseca, Caltrans Deputy Director for Civil Rights, stated that
Caltrans' assessment that Timberworks did demonstrate adequate good faith
efforts to meet the contract goal is correct. She stated that the faxed message
from Timberworks Vice President, Jennifer Knight (Appendix I), indicates
that the bid package was changed on the bid date via a phone call
communicating the final dollar number. Ms. Fonseca stated that this indicates
that Timberworks' bid package, including its good faith documentation, was
subject to revisions up to the bid opening date and time, despite being
submitted four days prior to bid opening.

Further, Ms. Fonseca stated that when considering all the good faith efforts
made by Timberworks, failing to list one rejected DBE bid, does not indicate
that Timberworks failed to demonstrate adequate good faith efforts. She
concludes that when considering all the efforts made by Timberworks, it
demonstrated adequate good faith efforts.

After further examination of the record, Ms. Fonseca concluded that
Timberworks did not demonstrate adequate good faith efforts to meet the
contract goal.

## VII.    Findings of Fact

MDS Construction, Inc. was the second-lowest bidder on a Federal-aid
highway contract, California Department of Transportation (Caltrans)
Contract No. 02-366704 (Federal Aid No. ACIM-005-9(158)E). This is a
contract to reconstruct a scale house on Interstate 5 near Mount Shasta,
California. It has a 5% disadvantaged business enterprise goal. The contract
was awarded to the apparent low bidder, Timberworks, after Caltrans
determined that Timberworks failed to meet the DBE goal, but demonstrated

adequate good faith efforts to obtain DBE participation. See Appendices A and J.

The two DBE bids that the Complainant alleges were rejected by Timberworks are from EnTerra Remediation, Inc. of Willits, California and Terry Pilkington Construction of Redding, California. EnTerra Remediation, Inc. was a certified DBE during 2002. See Appendix B.

Terry Pilkington Construction is not a certified DBE. It is not listed in the DBE database for California. The fax cover sheet for Terry Pilkington Construction submitted by the complainant's representative does indicate that this firm is certified as a Disadvantaged Veterans Business Enterprise (DVBE). See Appendix C. The DVBE Program is a State of California program that is not authorized for use on Federal-aid contracts.

Timberworks submitted no DBE participation with their bid and submitted their documented good faith efforts to attain DBE participation. See Appendix D. The DBE solicitations submitted by Timberworks includes a sample solicitation letter along with a list of firms solicited, and ads in the Construction Update, the Minority Bidders Bulletin and the Shasta Builders' Exchange. The letter indicates a June 18, 2002 bid date. The ads in the Construction Update and the Minority Bidders Bulletin indicate a June 18, 2002, 2:00 p.m. bid date and time and requested DBE subcontractors to respond by June 17, 2002. The ad in the Shasta Builders' Exchange indicate a June 18, 2002, 2:00 p.m. bid date and time. See Appendix E.

MDS Construction submitted a bid protest to Caltrans regarding the proposed award of Contract Number 02-366704 to Timberworks. It alleged that Timberworks did not demonstrate adequate good faith efforts to meet the DBE goal on this contract because it submitted no DBE participation with its bid and it rejected a DBE bid from EnTerra Remediation, Inc. See Appendix F.

Timberworks' documented response to the DBE good faith effort evaluation factor asking to list rejected DBEs, reasons for rejection, and firms selected for that work (Item D) indicates, "We received no interest / no response from DBEs to our advertisements and solicitations." See Appendix D.

Caltrans Analyst, Tillie Boranian, confirmed with Amanda Johnson (EnTerra) that it faxed quotes to all plan holders, including Timberworks. See Appendix G. The fax log from EnTerra indicates a fax transmission to Timberworks on June 18, 2002, at 8:36 a.m. See Appendix H.

Ms. Boranian's e-mail message of August 1, 2002, at 2:01 p.m. indicates that she spoke to Stacy Yousie, contact person for Timberworks, and asked why it failed to list EnTerra as a rejected DBE in its documented good faith efforts.

Her e-mail message states that Timberworks sent their bid to a courier service about three days prior to bid opening. The good faith efforts documentation was included and filed at the bid opening (June 18, 2002). See Appendix G.

In response to Ms. Boranian's inquiry into why Timberworks failed to list En Terra as a rejected DBE, Jennifer Knight, Vice-President of Timberworks, faxed a message to Ms. Boranian on August 1, 2002, stating that it used a bid courier service to deliver its bid. She wrote that Timberworks submitted its entire bid packet to the courier via Federal Express on June 14, 2002, and communicated its final bid number to the courier via telephone on June 18th. She wrote that at the time it sent its bid packet to the courier on June 14, 2002, it had received no affirmative responses to its invitations to bid from DBEs. See Appendix I.

After evaluation of this additional evidence, Caltrans concluded that Timberworks demonstrated adequate good faith efforts and approved the award of Contract No. 02-366704 to Timberworks on August 9, 2002. See Appendix J.

## VIII. Analysis

MDS Construction and the undisclosed OIG Hotline Complainant allege that Caltrans did not comply with the DBE regulations when it determined that Timberworks demonstrated adequate good faith efforts to obtain DBE participation on a Federal-aid contract with a DBE goal. When a recipient has established a DBE contract goal, it must award the contract only to a bidder/offeror who makes good faith efforts to meet it. A bidder/offeror does this if it documents sufficient DBE participation to meet the goal or it documents that it made adequate good faith efforts to meet the goal. See 49 C.F.R. § 26.53(a).

Appendix A to 49 C.F.R. Part 26 states that a bidder that documents adequate good faith efforts took all necessary and reasonable steps to achieve the DBE goal which, by their scope, intensity, and appropriateness to the objective, could reasonably be expected to obtain sufficient DBE participation. Further, such efforts employed by the bidder should be those that one could reasonably expect a bidder to take if the bidder were actively and aggressively trying to obtain DBE participation sufficient to meet the DBE contract goal. Mere *pro forma* efforts are not good faith efforts to meet the DBE contract requirements.

Caltrans Contract No. 02-366704 has a five-percent DBE goal. Timberworks submitted zero percent DBE commitment with its bid. In response to Caltrans analyst's inquiry into why Timberworks failed to list En Terra as a rejected DBE, Timberworks officials stated that it submitted its DBE good faith efforts documentation for this contract to a courier via Federal Express, for

submission to Caltrans at bid opening. This is at least three days prior to the DBE bid due date indicated in its solicitations to DBEs. The good faith efforts documentation indicated that Timberworks received no DBE bids. The timing of these events indicates that Timberworks did not intend to use any DBEs despite its other documented efforts.

Caltrans Deputy Director for Civil Rights stated that since Timberworks changed it bid package by communicating its final bid number to its courier on bid day, the entire bid package, including its good faith documentation was subject to change up to the bid opening. Therefore, she argued that Timberworks could change its good faith effort documentation and consider DBE bids up to bid opening.

The evidence indicates that Timberworks did not intend to amend its good faith documentation after submitting it to the courier four days prior to bid opening. Timberworks' documented response to the DBE good faith effort evaluation factor asking to list rejected DBEs indicates that it received no DBE bids. En Terra, a DBE firm, submitted a bid to Timberworks the morning before bid opening. In response to a Caltrans analyst's inquiry about why Timberworks failed to list En Terra as a rejected DBE, Timberworks responded that it already submitted its good faith documentation to the courier, i.e. it did not intend to alter its good faith efforts documentation.

Also, Caltrans argued that when considering all the good faith efforts made by Timberworks, failing to list one rejected DBE bid, does not indicate that Timberworks failed to demonstrate adequate good faith efforts. Caltrans concluded that when considering all the efforts made by Timberworks, it demonstrated adequate good faith efforts.

As discussed above, Timberworks submitted its DBE good faith efforts documentation for this contract, indicating that it received no DBE bids, to a courier via Federal Express, for submission to Caltrans at bid opening. This is at least three days prior to the DBE bid due date indicated in Timberworks' solicitations to DBEs. The timing of these events indicates that Timberworks did not intend to use any DBEs despite its other documented efforts. This evidence proves that Timberworks' other good faith efforts were *pro forma* efforts because it never intended to use any DBEs.

Timberworks did not take all necessary and reasonable steps to achieve the DBE goal and it did not make efforts that one would reasonably expect a bidder to take if it were actively and aggressively trying to obtain DBE participation sufficient to meet the contract goal. Notwithstanding the facts cited above, Caltrans determined that Timberworks demonstrated adequate good faith efforts and awarded this contract to Timberworks.

Report of Investigat    MDS Construction v. Caltrans                        6

## IX.    Conclusion

Caltrans awarded a Federal-aid contract with a DBE goal (Caltrans Contract No. 02-366744) to a bidder who failed to document adequate good faith efforts to meet the contract goal.

## X.    Corrective/Remedial Action

The cost of this contract is ineligible for Federal-aid participation. Caltrans will propose and implement actions it will take to ensure this situation will not occur in the future. These actions will be subject to FHWA concurrence. Further, Caltrans is invited to join FHWA in examining good faith effort analyses done on contracts similar to the one in this case to uncover other opportunities to improve the good faith analysis process.


_____                    4/15/64
Lance Yokota, Civil Rights Program Manager          Date


0042

# Exhibit
# O

**DEPARTMENT OF TRANSPORTATION**
CIVIL RIGHTS
1823 - 14TH STREET, MS-79
SACRAMENTO, CA 95814
Phone (916) 324-0990
Toll Free (866) 810-6346
Fax (916) 324-1949
TTY (916) 324-2252

ARNOLD SCHWARZENEGGER, Governor

*Flex your power!*
*Be energy efficient!*

May 7, 2004

Gene K. Fong
U.S. Department of Transportation
Federal Highway Administration
 California Division
650 Capital Mall, Suite 4-100
Sacramento, CA 95814

Dear Mr. Fong:

SUBJECT: MDS Construction v. California Department of Transportation
HAD-CA File #: 901, Document #S44654

This is in response to your letter dated April 19, 2004, regarding the MDS Construction complaint and the Office of Inspector General Hotline Complaint. These complaints allege that the Department of Transportation (Department) awarded a Federal-Aid contract with a Disadvantage Business Enterprise (DBE) goal (Contract No. 02-366744, Federal Aid No. IM-005-9 (158) E) to a bidder who failed to document adequate good faith efforts to meet the contract goal. Upon further examination of the information we acknowledge that our initial determination of a good faith effort on this contract was incorrect.

We appreciate your suggestion that the situation creates an opportunity to learn and improve the Department's DBE good faith evaluation process. The Department's Civil Rights, Contract Evaluation Unit (CEU), has studied the Report of Investigation and implemented actions to ensure this situation will not occur in the future.

Our current evaluation practice is to ascertain whether the contractor determined during the follow-up of their initial solicitation efforts, that there were not enough DBEs submitting bids to meet the goal. The CEU analyst will request the contractor to provide information as to what additional steps they took to expand their efforts to solicit DBEs in order to meet the project goal. The analyst will then consider whether the contractor genuinely intended to meet the goal prior to bid opening.

Case 3:04-cv-01955-MCE-PAN     Document 47-2     Filed 03/29/06     Page 65 of 68

As part of the CEU Desk manual procedures, an evaluation worksheet is included to guide CEU Staff in evaluating the good faith efforts of the low bidder. The evaluation worksheet will capture and ensure consistent analysis, findings and any actions taken by the bidder to be documented. The worksheet had been used on a voluntary basis in the past. All evaluations will now include use of the worksheet. The CEU Manager or Lead Analyst will continue to review all contract evaluations where a good faith effort is determined. Management will monitor and conduct a quality review of the evaluation analysis, justifying that the low bidder demonstrated adequate good faith efforts.

Formal inquiry and complaint procedures have been recently developed and implemented to monitor all complaints and to ensure timely responses. The complaints are captured on a database (FileMaker Pro) Contract Tracking Log. The procedures have been included into the CEU desk manual.

Also, the CEU staff has requested additional Federal Highway Administration training on the Good Faith Efforts and contract goals for the Federal fiscal year 2005. The CEU staff will continue to devote on an ongoing basis discussions on the Regulations, specific contract cases and review past training videos.

We look forward to joining Lance Yokota, Federal Highway Administration, to review and study similar contracts to uncover other opportunities to the contract evaluation process. If you have further questions, please contact Janice Salais, Contract Evaluation Manager at (916) 324-0841.

Sincerely,

OLIVIA FONSECA
Deputy Director

c:     Tony Harris, Department of Transportation, Acting Director
       Fardad Falakfarsa, Department of Transportation, Federal Resources
       Gerald Long, Department of Transportation, Audits and Investigations
       Brian Crane, Department of Transportation, District Director, District 02
       Diane Teece, Federal Highway Administration, CA Division
       Lori Wallace, Federal Highway Administration
       Lance Yokota, Federal Highway Administration

# Exhibit P

STATE OF CALIFORNIA— BUSINESS, TRANSPORTATION AND HOUSING AGENCY

ARNOLD SCHWARZENEGGER, Governor

# DEPARTMENT OF TRANSPORTATION
CIVIL RIGHTS
1823 - 14TH STREET, MS-79
SACRAMENTO, CA 95814
Phone (916) 324-1700
Toll Free (866) 810-6346
Fax (916) 324-1949
TTY (916) 324-2252



*Flex your power!*
*Be energy efficient!*

June 1, 2004

Gene K. Fong
U.S. Department of Transportation
Federal Highway Administration
California Division
650 Capital Mall, Suite 4-100
Sacramento, CA 95814

Dear Mr. Fong:

SUBJECT: MDS Construction v. California Department of Transportation (Department)
HAD-CA File # 901, Document #S44654

I write to clarify my May 7, 2004, letter to you on the above subject matter. Upon further review of my May 7, 2004, letter, I noticed the inadvertent inclusion of the last sentence of the first paragraph. The sentence is "Upon further examination of the information we acknowledge that our initial determination of good faith effort on this contract was incorrect." This sentence is not an accurate statement of the Department's position concerning the good faith efforts of Timberworks, the low bidder, for Contract No. 02-366704.

On or about April 13, 2004, I called and left a voice message with Lance Yokota, Civil Rights Manager. I recall telling Mr. Yokota, that the Department did not agree with the "false statement" argument posed in a previous telephone call with Mr. Yokota. I also indicated the Department had reviewed the file and that Timberworks could have expanded its good faith efforts to meet the Disadvantaged Business Enterprise (DBE) goal. My last comment was not intended as an acknowlegement that the Department believed its determination on the adequacy of Timberworks' good faith efforts was erroneous. It was merely intended to convey to Mr. Yokota that the Department recognized that the Federal Highway Adminstration (FHWA) could have a different view of the adequacy of Timberworks' good faith efforts.

*"Caltrans improves mobility across California"*

Mr. Gene Fong
June 1, 2004
Page 2

In its Report of Investigation, section IV, FHWA includes a statement that, after further examination, the Department had concluded that Timberworks did not demonstrate good faith efforts to meet the DBE contract goal. For the reasons discussed above, this is not an accurate statement of the Department's position.

As for the remaining discussion in my letter of May 7, 2004, the Department still intends to implement the referenced improvements in our evaluation process.

Sincerely,

OLIVIA FONSECA
Deputy Director
Civil Rights

c: Tony Harris
    Bruce Behrens
    Jose Aguirre

*"Caltrans improves mobility across California"*