1  BILL LOCKYER
   Attorney General of the State of California
2  CHRISTOPHER AMES
   Senior Assistant Attorney General
3  LARRY G. RASKIN
   State Bar No. 116112
4  Supervising Deputy Attorney General
   JEFFREY SIMPTON
5  State Bar No. 166862
   Deputy Attorney General
6  ELIZABETH LINTON
   State Bar No. 231619
7  Deputy Attorney General
     1300 I Street
8    P.O. Box 944255
     Sacramento, CA 94244-2550
9    Telephone: 916-323-8549
     Fax: 916-323-6882
10   Email: Elizabeth.Linton@doj.ca.gov
   Attorneys for Real Party in Interest/State of California

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **UNITED STATES OF AMERICA and the STATE OF CALIFORNIA** *ex rel.* **MIKE STIERLI,**<br><br>Relator Plaintiff,<br><br>v.<br><br>**SHASTA SERVICES, INC. dba TIMBERWORKS; and DOES 1 through 50, inclusive,**<br><br>Defendant. | S-04-1955 MCE/PAN<br><br>**STATE OF CALIFORNIA'S REPLY IN STATE'S MOTION TO DISMISS THE CALIFORNIA FALSE CLAIMS ACT CLAIMS**<br><br>MAY 1, 2006<br>9:00 a.m.<br>Honorable Morrison England |

## INTRODUCTION

The real party in interest, the California State Attorney General's Office (CAGO) established in its motion to dismiss that good cause exists for dismissing the California False Claims Act (CFCA) claims in this action brought by qui tam plaintiff, Mike Stierli (Stierli). Defendant Shasta Services, Inc. dba Timberworks (Timberworks) filed a nonopposition to the CAGO's motion to dismiss and requested that the Court dismiss this action in its entirety. Subsequently, the United States of America, also a real party in interest, joined in both motions and demonstrated good cause for dismissal of the entire action.

Instead of rebutting that good cause exists for dismissal, Stierli attempts to distinguish the prevailing CFCA authority, mischaracterizes the CAGO's position, and challenges the timing of the motion and the CAGO's standing to bring it. The plain language of the relevant sections of the CFCA and constitutional concerns contradict Stierli's standing and timing arguments. Since Stierli has failed to rebut that dismissal is rationally related to legitimate government purposes, good cause exists for dismissing the CFCA claims.

## ARGUMENT

### I. Consistent with the Plain Language of the Statute and Constitutional Considerations, the Government Need Not Officially Intervene in the Action Prior To Filing Its Motion to Dismiss.

Stierli inaccurately asserts that the State of California lacks standing to bring the motion to dismiss because it has not intervened in the action. He attempts to support this argument by citing to dicta in a California case in which the state had intervened in a qui tam action. *Opposition*, at 2:13-19 citing *Am. Contract Servs. v. Allied Mold & Die*, 94 Cal.App.4th 854 (2001). The issue whether the CAGO must intervene prior to filing a motion to dismiss was not before the court in *Allied Mold*, and *Allied Mold* does not stand for the proposition that the CAGO must intervene prior to moving for dismissal.

Such an interpretation is contrary to the plain language of California Government Code section 12652(e)(2)(A) which does not require the government to officially intervene in an action prior to bringing a motion to dismiss. Cal. Gov't Code § 12652(e)(2)(A).[1] In addition, courts have repeatedly recognized that the government need not intervene to seek dismissal. *Ridenour v. Kaiser-Hill Co.*, 397 F.3d 925 (10th Cir.) *cert. denied*, 126 S.Ct. 341 (2005) (the plain reading of the statute does not support a requirement of intervention); *Swift v. United States*, 318 F.3d 250, 251

---

1. Hereinafter, all code references are to the California Government code unless otherwise noted. Section 12652(e)(2)(A) states: "The state or political subdivision may seek to dismiss the action for good cause notwithstanding the objections of the qui tam plaintiff if the qui tam plaintiff has been notified by the state or political subdivision of the filing of the motion and the court has provided the qui tam plaintiff with an opportunity to oppose the motion and present evidence at a hearing."

(D.C.Cir.) *cert. denied*, 539 U.S. 944 (2003) (intervention is necessary only if the government wishes to proceed with the action, and dismissal does not constitute proceeding with the action); *United States ex rel. Sequoia Orange Co. v. Baird-Neece Packing Corp.*, 151 F.3d 1139, 1145 (9th Cir. 1998) (noting that the Ninth Circuit has recognized that intervention may not be necessary prior to dismissal); *United States ex rel. Kelly v. Boeing Co.*, 9 F.3d 743, 754 (9th Cir. 1993) (recognizing and finding appropriate *Juliano's* interpretation that the FCA permits the government to move for dismissal without intervening, *see infra*); *United States ex rel. Friedman v. Rite Aid Corp.*, 152 F. Supp. 2d 766, 772 (E.D. Pa. 2001) (even if government declines to intervene, it retains significant control over actions, including the power to dismiss); *Juliano v. Fed. Asset Disposition Ass'n*, 736 F. Supp. 348, 351 (D.D.C. 1990) (permitting the government to dismiss without intervening), *aff'd*, 959 F.2d 1101 (D.C.Cir. 1992).[2]

Stierli argues that because the CAGO initially declined to intervene, the state ceded its prosecution authority to relator, including the CAGO's ability to move to dismiss the action. *Opposition*, at 4:21-24. He arrives at this conclusion by intermingling two distinct sections of the CFCA -- one which governs the government's delayed intervention in a CFCA action (section 12652(f)) and the other which controls the CAGO's power to dismiss an action (section 12652(e)(2)(A)). These two sections should be read independently. *See Swift*, 318 F.3d at 251-252 (rejecting argument that two sections of the FCA should be read in conjunction with each other so as to require intervention prior to dismissal; the plain language of the dismissal section should be read independently and does not require intervention).

---

2. The CFCA is patterned on similar federal legislation, and federal decisions are persuasive on the meaning of the Act. *Laraway v. Sutro & Co.*, 96 Cal.App.4th 266, 274-275 (Cal. App. 2002). The corresponding language of the federal statute similarly provides that the government may dismiss a qui tam action notwithstanding the relator's objections provided the relator has an opportunity for a hearing on the motion. 31 U.S.C. § 3730(c)(2)(A).

Not only does a plain reading of section 12652(e)(2)(A) not support an intervention requirement, Stierli's statutory construction would render the CFCA constitutionally invalid.[3] *Ridenour*, 397 F.3d at 934. Circuit courts have uniformly held that the FCA is constitutionally sound so long as it is interpreted as granting the government sufficient control over qui tam actions, so that there is no violation of the Executive Branch's constitutional duty to enforce the laws of the land.[4] *Id.* This control over qui tam actions includes the power to dismiss them. *Id., citing, Kelly*, 9 F.3d at 754. "To condition the Government's right to move to dismiss an action in which it did not initially intervene upon a requirement of late intervention tied to a showing of good cause would place the FCA on constitutionally unsteady ground." *Ridenour*, 397 F.3d at 935.

The CAGO must be able to exercise its prosecutorial discretion and enforce the law in furtherance of justice and not just sit aside like a potted plant regardless of what additional information comes to light during the litigation. Because courts should interpret statutes so as to render them constitutionally valid,[5] the Court should reject Stierli's argument that the state must intervene prior to bringing a motion to dismiss.

## II. The Court May Interpret the Motion to Dismiss As Including A Motion To Intervene, and Intervention is Proper Because Stierli Is Not Representing the State's Interests.

Alternatively, the Court may construe the motion to dismiss as including a motion to intervene. *Ridenour*, 397 F.3d at 934, n13; *Swift*, 318 F.3d at 253 (finding that the intervention question is largely academic because if there were an intervention requirement, the district court

---

3. California's separation of powers analysis essentially follows the federal framework. *National Paint & Coatings Assoc., Inc. v. State of California*, 58 Cal.App.4th 753, 762 (Cal. App. 1997).

4. Both the federal and state constitutions bestow on the Executive Branch the duty to ensure that the law is faithfully executed. *U.S. Const., art. II, § 3; Cal. Const., art. V, § 1.*

5. *See Zadvydas v. Davis*, 533 U.S. 678, 689 (2001) (courts should examine whether a construction of a statute is possible which will avoid a constitutional question); *Almendarez-Torres v. United States*, 523 U.S. 224, 237 (1998) ("A statute must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional but also grave doubts upon that score.")

Reply to State of California's Motion to Dismiss
4

could construe the motion to dismiss as including a motion to intervene). The CAGO may intervene in an action in which it has initially declined to proceed if the qui tam plaintiff is not adequately representing the interests of the state in the recovery of funds or property. Section 12652(f)(2)(A). For the reasons explained in the CAGO's motion to dismiss, Stierli is not representing the interests of the state. Namely, Stierli's action is an abuse of the CFCA that does not comport with the goals of the Act (preventing fraud and protecting the public fisc) but, rather, improperly seeks to vindicate the personal grievance of a disgruntled bidder and challenge the state's contracting procedures. Instead of compensating the government for fraud, this action is a drain on public resources and interferes with the state's ability to enter into procurement contracts by chilling potential bidders. Nothing in Stierli's opposition supports the notion that he represents the state's interests. Thus, good cause exists for the CAGO's intervention should the Court wish to construe the motion to dismiss as containing a motion to intervene.

### III. The State's Motion to Dismiss is Timely Under Section 12652(e)(2)(A), and Rule 12(b) Time Limits Are Irrelevant.

Stierli argues that the CAGO's motion to dismiss is untimely because it was not brought before the answer or other responsive pleading was filed as required by Federal Rule of Civil Procedure 12(b). *Opposition.*, at 3-4. This argument is specious because the CAGO's motion is made pursuant to the CFCA, section 12652(e)(2)(A), rather than under Federal Rule of Civil Procedure 12(b). *See Motion*, at 2:11-12, 5:1-2. Under the CFCA, the government can move to dismiss at any time for good cause, notwithstanding the objections of the qui tam plaintiff. Section 12652(e)(2)(A); *see, e.g., Sequoia Orange*, 151 F.3d at 1141-42 (moving to dismiss the FCA case despite relators' objections over six years after the case was filed and after previously intervening and then withdrawing from the case). Therefore, the CAGO's motion to dismiss is timely under section 12652(e)(2)(A).

///

///

///

Reply to State of California's Motion to Dismiss
5

## IV. Good Cause Exists to Dismiss the CFCA Claims Because the State Has Satisfied the Standard for Dismissal and Stierli Has Failed to Rebut It.

Stierli's opposition fails to counter the CAGO's showing that good cause exists for dismissal. In its dismissal motion, the CAGO establishes several legitimate government purposes rationally related to dismissal of the CFCA claims in this action including: preventing abuse of the CFCA, preserving the public fisc, and preventing private parties from interfering with the state's ability to enter into contracts to achieve governmental objectives. *Laraway*, 96 Cal.App.4th at 275-276 (dismissal appropriate where rationally related to legitimate government purpose). Stierli has failed to show that dismissal is arbitrary, capricious, made in bad faith, based on improper or illegal motives, founded on an inadequate investigation, or pretextual. *See id.* Therefore, good cause exists to dismiss this action.

### A. Stierli Cites No Authority That the CFCA May Be Used as a Vehicle to Challenge the State's Contracting Practices.

Stierli's efforts to distinguish and discredit *Allied Mold* fail to respond to the premise that the CFCA is not a proper vehicle for challenging the state's contracting practices. Further supporting that this action is really just an attack on CalTrans' bid process, Stierli cites numerous cases that have held that a contractor cannot recover payment on a contract rendered void by a public entity acting in excess of its power. The cited cases do not contradict *Allied Mold* because none of them are brought under the CFCA. While contracting irregularities and agency actions in excess of their power may support claims of contract invalidity, they do not thereby also automatically rise to the level of CFCA violations. The Ninth Circuit has stated that not every violation of regulations constitutes a claim under the FCA. *United States ex rel. Hopper v. Anton*, 91 F.3d 1261, 1265 (9th Cir.1996). The court explained, "This does not mean that other types of violations of ... federal laws and regulations are not remediable; it merely means that such are not remediable under the FCA or the citizen's suit provisions contained therein." *Id.*

Stierli's efforts to distinguish *Allied Mold* are disingenuous. Contrary to Stierli's assertions, the state agrees that fraudulent representations (including misrepresentations about DBE status) in

Reply to State of California's Motion to Dismiss

6

the inducement of a contract can constitute a false claim under the CFCA. However, the evidence does not support a finding of "fraudulent" conduct by Timberworks. CalTrans conducted a thorough evaluation of the allegations against Timberworks and concluded that the company acted reasonably in not including the last-minute DBE bid in its bid package. After the thorough CalTrans investigation, it awarded the contract to Timberworks, and permitted Timberworks to proceed despite the pending federal protest. CalTrans found Timberworks to be forthright during the investigation, and CalTrans sanctioned the conduct that allegedly constitutes a false claim. A disagreement between governmental agencies on the implementation of a subjective DBE evaluation process does not support the serious allegations that Timberworks defrauded the state, nor does the Federal Department of Transportation's report support that conclusion.

Although not completely clear, Stierli apparently attempts to distinguish the case currently before the Court from *Allied Mold* because this case allegedly implicates a Constitutional claim. This effort is equally futile.[6] Stierli's disjointed arguments do not overcome the fact that the contentions in this action are based on an underlying premise identical to that which his counsel presented to the court in *Allied Mold (i.e.*, that submission of a claim for payment on a contract that is allegedly void, due to some governmental imperfection with the contracting process, is a false claim). *Allied Mold*, 94 Cal.App.4th at 863-864. Just as in *Allied Mold*, the premise has no application under the facts presented here. None of Stierli's allegedly distinguishing factors affect *Allied Mold's* finding that the CFCA is not a proper vehicle for policing *governmental* compliance with government contracting procedures. Moreover, none of these arguments establish that the

---

6. Not only is an opposition to a dismissal motion an inappropriate place to raise for the first time a Constitutional claim, Stierli's Constitutional argument is completely without merit. Although the California Constitution does prohibit the use of preferential treatment based on certain specified factors in public contracting, it also specifically exempts actions taken to maintain eligibility for federal programs and federal funding. Cal. Const., art. I, § 31(e). This would include the federal disadvantaged business enterprise (DBE) requirement in the CalTrans' contract which is the subject of the instant dispute. Moreover, the DBE requirement does not necessarily include one of the preferences specified in the Constitution since it may encompass any "socially and economically disadvantaged individual." 49 C.F.R. § 26.5.

CAGO's motion to dismiss is arbitrary, capricious, made in bad faith, based on improper or illegal motives, founded on an inadequate investigation, or pretextual, as required by *Laraway*.

### B. Good Cause Exists for Dismissal Because this Action Is a Waste of Limited Government Resources.

Stierli vehemently argues that the public fisc has been harmed in this action because the federal government withdrew federal funding for the truck inspection facility's construction, and thus a false claims act is appropriate. However, this argument misconstrues the CAGO's position, which is that the continued prosecution of this action is a drain on the public fisc, irrespective of any initial impact to public monies.[7]

When a case has little or no merit, and continued prosecution will likely result in a waste of limited government resources, good cause exists for dismissal. *Allied Mold*, 94 Cal.App.4th at 862. This case has required the expenditure of significant government resources. Not only has CalTrans been forced to respond to discovery requests, the CAGO has had to respond to a subpoena seeking privileged documents, inappropriate attempts to serve it with discovery documents that should have been served upon CalTrans, and a groundless *ex parte* application. What Stierli classifies as a "pattern of harassment" is nothing more than the CAGO expending considerable resources explaining basic legal tenets to the qui tam plaintiff in response to inappropriate discovery requests and an ex parte application. Contrary to preserving the public fisc, the qui tam plaintiff is taxing limited government resources in a meritless false claims action.

### C. The CFCA Claims Interfere with the State's Ability to Enter into Procurement Contracts.

Stierli fails to respond to the CAGO's argument that the CFCA actions unduly burden the state's ability to enter into procurement contracts when, as here, the claims are brought by a losing

---

7. This argument also overlooks that injury to the public fisc alone will not support a CFCA action. The CFCA is intended to protect public monies against *fraudulent claims*, and where, as here thorough investigations by the CAGO and USAGO have revealed no indications of fraud, a false claims action cannot stand.

bidder and the state asserts that the contract recipient committed no false claim. Prosecuting winning bidders, like Timberworks, in such circumstances undermines the ability of the state and its contractors to rely upon procurement contracts.

## CONCLUSION

The CAGO has identified legitimate government reasons rationally related to dismissal of the CFCA claims in this action, and Stierli has failed to show that dismissal is arbitrary, capricious, made in bad faith, based on improper or illegal motives, founded on an inadequate investigation, or pretextual. Because good cause exists for dismissal, and Stierli's standing and timing arguments lack merit, the CAGO respectfully requests that the Court grant the CAGO's motion, joined by Timberworks and the United States, and dismiss the CFCA claims.

Dated: April 24, 2006

BILL LOCKYER,
Attorney General

CHRISTOPHER M. AMES,
Senior Assistant Attorney General

LARRY G. RASKIN
Supervising Deputy Attorney General

JEFFREY SIMPTON
Deputy Attorney General

/s/ Elizabeth Linton

ELIZABETH LINTON
Deputy Attorney General
Attorneys for the State of California