UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA and the STATE OF CALIFORNIA *ex rel.* MIKE STIERLI,<br><br>    Relator Plaintiff,<br><br>    v.<br><br>SHASTA SERVICES INC. dba TIMBERWORKS; and DOES 1 through 50, inclusive,<br><br>    *Qui Tam* Defendants. | No. 2:04-cv-1955-MCE-PAN (JFM)<br><br><br><br><br>MEMORANDUM AND ORDER |

----oo0oo----

In filing the present lawsuit, *Qui Tam* Plaintiff Mike Stierli ("Stierli") has attempted to invoke false claims provisions contained within both state and federal law.

///
///
///
///
///

1

Stierli's company, MDS Construction, Inc. ("MDS"), was an unsuccessful bidder for a California Department of Transportation ("CalTrans") project, and Stierli has now sued the lowest bidder on the project in question, Shasta Services. Inc. dba Timberworks ("Timberworks") on grounds that Timberworks' bid was fraudulent and hence violated both the federal False Claims Act, 31 U.S.C. § 3729, et seq., and its California counterpart, California Government Code § 12650, et seq.  The United States of America ("United States") and the State of California ("State") now move to dismiss Stierli's Complaint on grounds that no False Claims Act violation has occurred.  In addition to those motions to dismiss, both Stierli and Timberworks have also filed Cross Motions for Summary Judgment requesting that this matter be adjudicated in their respective favors.  As set forth below, the Court determines that dismissal is warranted as to Stierli's state and federal claims.

**BACKGROUND**

On June 18, 2002, Timberworks submitted a bid to CalTrans for construction of a truck inspection facility in Siskiyou County, California.  The terms of the project proposal required bidders to either subcontract five percent of contract work to disadvantaged business entity ("DBE") companies, or to demonstrate good faith, but unsuccessful, attempts to do so. Timberworks' bid, which was found to be lowest, contained the requisite good faith certification indicating that no DBEs had responded to Timberwork's solicitation for work on the contract.

1    On or about June 21, 2002, two days after bids were opened,
2 MDS submitted a bid protest letter to CalTrans claiming that
3 Timberworks had not incorporated a bid from a certified DBE,
4 EnTerra Remediation, Inc. ("EnTerra").  In the meantime, CalTrans
5 proceeded to evaluate Timberwork's good faith DBE efforts and
6 concluded those efforts were sufficient on June 26, 2002.
7    After MDS submitted a second protest letter on July 13, 2002
8 and included a copy of EnTerra's letter of interest, on July 25,
9 2002, CalTrans reiterated its previous decision that Timberwork's
10 efforts to obtain a qualified DBE were sufficient. On July 26,
11 2002 MDS appealed yet again to CalTrans' Civil Rights Program,
12 and an additional investigation ensued.  CalTrans contacted
13 EnTerra and determined that its faxed quote had been sent to
14 Timberworks at 8:36 a.m. on June 18, 2002, just over five hours
15 before final bid packages had to be submitted.  CalTrans further
16 spoke to involved Timberworks personnel who explained that given
17 the distance between Timberworks' office in Mt. Shasta,
18 California, and CalTrans' Sacramento headquarters, the bid
19 package had been delivered by Federal Express to a bid courier on
20 June 14, 2004, four days before bids were due, in order to ensure
21 timely submission.  Timberworks explained that it had not
22 received any affirmative responses from DBEs as of June 14, 2002.
23 Timberworks was determined by CalTrans to have been "responsive
24 and forthright" in providing this information, and CalTrans found
25 yet again that Timberworks had demonstrated good faith efforts
26 towards DBE compliance despite EnTerra's last-minute bid
27 submission.  (Decl. Of Olivia Fonseca, ¶¶ 6-7).
28 ///

CalTrans then approved the award of the contract in question to Timberworks on August 9, 2002, after it had full knowledge of Timberwork's alleged noncompliance.

Although MDS filed a complaint with the United States Department of Transportation ("USDOT") Federal Highway Administrative Office of Civil Rights on September 13, 2002 (given the fact that federal monies were earmarked for the project), Timberworks was not notified of the pendency of that complaint and commenced its work. (Decl. of Harold J. Knight, ¶ 11). CalTrans paid each claim presented for payment, however, "fully aware of the pending federal complaint." (Fonsceca Decl., ¶ 9). Furthermore, CalTrans accepted the completed project on December 31, 2003. Finally, by the time the USDOT issued its determination on April 16, 2004 that the project was not in fact eligible for federal funding because of insufficient DBE participation, all pay applications for the project had already been submitted by Timberworks. (Knight Decl., ¶ 13).

Although the USDOT ultimately concluded that the project was noncompliant, by admission from the author of its report, USDOT's investigation "was limited to evaluating procedures used by CalTrans." (Decl. of Lance Yokota, ¶ 7). Timberworks' own role with respect to any false claim was not investigated, and as stated above, Timberworks was not even informed of the investigation until after it was completed. Nowhere does the USDOT report find that Timberworks defrauded the federal government or submitted false claims to CalTrans.

The current lawsuit was filed against Timberworks on September 20, 2004.

4

1 Stierli instituted the action as a *qui tam* plaintiff in order to
2 recover, on behalf of both the State and the federal government,
3 monies that were allegedly fraudulently obtained by Timberworks.
4 The United States and the State of California initially declined
5 to intervene for purposes of affirmatively protecting their
6 interests, leaving Stierli to prosecute the matter in their
7 stead.  Now, however, through the Motions to Dismiss presently
8 before the Court, both governmental entities now seek to dismiss
9 Stierli's Complaint as unwarranted.

**STANDARD**

Dismissal of a *qui tam* plaintiff's complaint requires a two-step analysis.  The governmental real party in interest must identify both a valid government purpose in moving for dismissal and a rational relation between dismissal and accomplishment of that purpose. U.S. ex rel. Sequoia Orange Co. v. Baird-Neece Packing Corp., 151 F.3d 1139, 1145 (9th Cir. 1998); Laraway v. Sutro & Co., Inc., 96 Cal. App. 4th 266, 275 (Cal. App. 2002). Good cause for such dismissal depends on the particular circumstances of each case, and relevant matters may include the relative merits of the action, the interest of the *qui tam* plaintiff, the purposes underlying the False Claims Act, and the potential waste of government resources. Laraway, 96 Cal. App. 4th at 276; see also Am. Contract Servs. v. Allied Mold & Die, Inc., 94 Cal. App. 4th 854, 862 (Cal. App. 2001).
///
///

1 If the government makes a showing that dismissal is
2 warranted, the burden then switches to the *qui tam* plaintiff to
3 demonstrate that dismissal is in fact fraudulent, arbitrary and
4 capricious, or illegal.  <u>Sequoia Orange</u>, 151 F.3d at 1145.

## ANALYSIS

The federal False Claims Act, 31 U.S.C. § 3729, et seq., permits a private party to bring a false claims action, on behalf of the government, in order to prevent fraud against the public treasury resulting in financial loss.  <u>U.S. v. Neifert-White Co.</u>, 390 U.S. 228, 232 (1968).  A so-called *qui tam* action may be instituted against anyone who (1) knowingly presents, or causes to be presented, to the government a false or fraudulent claim for payment or approval; 2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the government; or 3) conspires to defraud the government by getting a false or fraudulent claim allowed or paid.  31 U.S.C. §§ 3729(a), 3730(b).

The California False Claims Act was patterned after, and closely resembles, its federal counterpart.  <u>Rothschild v. Tyco Int'l, Inc.</u>, 83 Cal. App. 4th 488, 494 (2000).  Because of the similarity between the two Acts, federal decisions are deemed persuasive authority in interpreting both state and federal provisions.  <u>Laraway</u>, 96 Cal. App. 4th at 274-75.

///
///
///

1  California's legislation also provides for a *qui tam* private
2 right of action (Cal. Gov't Code § 12652), and is also designed
3 to prevent the submission of fraudulent claims for payment by the
4 public fisc.  S. Cal. Rapid Transit Dist. v. Super. Ct., 30 Cal.
5 App. 4th 713, 725 (1994).  Both the state and federal Acts
6 provide for treble damages plus civil monetary penalties, up to
7 $10,000, for each false claim for payment to which the offending
8 claimant is not entitled.  31 U.S.C. § 3729(a); Cal. Govt. Code §
9 12651.
10  A *qui tam* action is initially filed under seal in order to
11 afford the governmental entity time to determine whether it
12 wishes to prosecute the action.  In the present case, both the
13 United States and the State of California elected not to
14 intervene, therefore allowing Stierli, as the *qui tam* plaintiff,
15 to represent their rights in prosecuting the claim against
16 Timberworks.  Even if the government elects not to intervene,
17 however, it remains the real party in interest.  State ex rel.
18 Bowen v. Bank of Am. Corp., 126 Cal. App. 4th 225, 237 (Cal. App.
19 2005); U.S. v. Health Possibilities, P.S.C., 207 F.3d 335, 341-42
20 (6th Cir. 2000).
21  The governmental real parties in interest retain the right
22 to dismiss a *qui tam* claim for good cause, despite objection by
23 the *qui tam* plaintiff, even if said parties have not previously
24 moved to intervene.  California Government Code § 12652(e)(2)(A)
25 states:
26 ///
27 ///
28 ///

> "The state or political subdivision may seek to dismiss the action for good cause notwithstanding the objections of the qui tam plaintiff if the qui tam plaintiff has been notified by the state or political subdivision of the filing of the motion and the court has provided the qui tam plaintiff with an opportunity to oppose the motion and present evidence at a hearing."

Similarly, the federal Act also provides that the United States may dismiss an action in its name

> "notwithstanding the objections of the person initiating the action if the person has been notified by the Government of the filing of the motion and the court has provided the person with an opportunity for a hearing on the motion."

31 U.S.C. § 3730(c)(2)(A).

Stierli claims that because the State Act's authorization for dismissal comes within the context of a subsection applicable to instances where intervention has in fact occurred, the State lacks any standing to pursue a motion to dismiss in the absence of such intervention. It cites the Allied Mold case, which uncritically recites the language of the statute under circumstances where further statutory construction was not necessary since the State had intervened in the controversy there present. Allied Mold, 94 Cal. App. 4th at 856, 859. The Ninth Circuit, however, in its Sequoia Orange decision, has noted that the analogous federal statute "may permit the government to dismiss a qui tam action without actually intervening in the case at all." Sequoia Orange, 151 F.3d at 1145, citing U.S. ex rel. Kelly v. Boeing Co., 9 F.3d 743, 754 (9th Cir. 2003). Other case authority is squarely in accord.

///
///
///

See, e.g., Ridenour v. Kaiser-Hill Co., 397 F.3d 925, 932-33 (10th Cir. 2005) (the plain reading of the statute does not support a requirement of intervention); Swift v. U.S., 318 F.3d 250, 251 (D.C. Cir. 2003) (intervention is necessary only if the government wishes to proceed with the action, and dismissal does not constitute proceeding with the action).

Significantly, this interpretation is in accord with the constitutional mandate that the False Claims Act passes muster under a separation of powers analysis only if the government retains sufficient control over *qui tam* actions pursued in its name. Ridenour, 397 F.3d at 934; Nat'l Paint & Coatings Assoc., Inc. v. State of Cal., 58 Cal. App. 4th 753, 762 (Cal. App. 1997). The control over *qui tam* actions includes a right to dismiss, and, as the Ridenour court states, "to condition the Government's right to move to dismiss an action in which it did not initially intervene upon a requirement of late intervention tied to a showing of good cause would place the FCA [False Claims Act] on constitutionally unsteady ground." Ridenour, 397 F.3d at 934. Moreover, even were intervention deemed essential as a prerequisite for moving to dismiss, which this Court does not believe to be the case, the Court still may construe the motion to dismiss as impliedly including a motion to intervene, and consider the motions to dismiss accordingly. Ridenour, 397 F.3d at 934, n.13; Swift, 318 F.3d at 253. Consequently, because the Court may entertain a motion to dismiss under either alternative, it deems the present challenges to be properly before it.

Having established the initial propriety of both motions, we now turn to the merits.

1  Both real parties in interest contend that the action has no
2  merit inasmuch as no False Claims Act violation has occurred.  As
3  set forth above, the overall relative merits of an action may
4  determine whether a governmental entity has good cause to request
5  its dismissal.  Laraway, 96 Cal. App. 4th at 276.  The Court
6  agrees that no actionable violation has occurred under the
7  circumstances of this case.
8       The facts show that there had been full disclosure as to the
9  particulars concerning Timberworks' bid both before CalTrans
10 awarded the project in question to Timberworks, and before any
11 claim for payment was submitted by Timberworks.  By August 9,
12 2002, when Timberworks formally obtained the contract, CalTrans
13 had received three separate protest letters from Stierli, knew
14 the circumstances of the last-minute EnTerra bid, and knew
15 Timberworks' justification for not including that bid in its
16 proposal.  In addition, CalTrans had otherwise investigated the
17 sufficiency of Timberwork's good faith DBE compliance.  Not only
18 did CalTrans award the project with full knowledge as to all
19 those issues, it approved and paid Timberworks' invoices even in
20 the face of the ongoing USDOT investigation, an investigation
21 with respect to which Timberworks had no participation and no
22 knowledge.  Timberworks had both completed the project and
23 submitted all its payment requests by the time the USDOT issued
24 its decision on April 16, 2004.
25      In U.S. ex rel. Hopper v. Anton, 91 F.3d 1261, 1266 (9th
26 Cir. 1996), the Ninth Circuit made it clear that the False Claims
27 Act "attaches liability, not to underlying fraudulent activity,
28 but to the "claim for payment".

1  The court explained that what constitutes an offense under the
2  Act is the knowing presentation of such a claim that is either
3  fraudulent of simply false.  <u>Id.</u>, citing <u>U.S. ex rel. Hagood v.</u>
4  <u>Sonoma County Water Agency</u>, 929 F.2d 1416, 1421 (9th Cir. 1991).
5  Significantly, <u>Hopper</u> concluded that there is no remedy under the
6  Act "absent actionable false certifications *upon which funding is*
7  *conditioned*."  <u>Id.</u> at 1267, emphasis added.

8  　　　The <u>Allied Mold</u> case provides further explication in noting
9  that there cannot be a knowing presentation of a false claim for
10 payment where the government is fully aware of the facts
11 surrounding the claim and approves it.  The court approvingly
12 cited the Seventh Circuit's decision in <u>U.S. ex rel. Durcholz v.</u>
13 <u>FKW, Inc.</u>, 189 F.3d 542, 544-45 (7th Cir. 1999) as follows:

> "The government's prior knowledge of an allegedly false claim can vitiate a FCA action.  If the government knows and approves of the particulars of a claim for payment before that claim is presented, the presenter cannot be said to have knowingly presented a fraudulent or false claim.  In such a case, the government's knowledge effectively negates the fraud or falsity required by the FCA."

18 　　　In the present case, because CalTrans had full knowledge of
19 the circumstances surrounding Timberworks' bid before any payment
20 request was ever submitted, there was no false claim, actionable
21 under the Act and directed to CalTrans, for which liability can
22 attach.  With respect to the United States, not only did
23 Timberworks never submit a payment directly to the federal
24 government (its indirect submission through CalTrans for federal
25 funding necessarily implicates the same analysis applicable to
26 CalTrans), but in withdrawing federal funding and never paying
27 any monies there was not any "false or fraudulent claim paid or
28 approved" by the federal government in any event.

11

1 See, e.g., 31 U.S.C. § 3729(a)(2).

2     It follows that Stierli cannot make any viable claim here on
3 behalf of the governmental entities, and that failure constitutes
4 good cause for dismissing this action at the request of both the
5 State of California and the United States.  Other factors,
6 however, also point towards dismissal.  The State points out that
7 the allegations of Stierli's Complaint points towards
8 improprieties on behalf of CalTrans, a supposed victim on behalf
9 of which Stierli purports to be suing.  The Complaint, for
10 example, alleges at ¶ 26 that CalTrans acted in excess of its
11 authority because if failed to comply with federal law and
12 regulations governing DBE participation.  The Complaint also, at
13 ¶ 23, relies upon the USDOT'S finding that CalTrans had
14 improperly awarded the contract to Timberworks, despite the fact
15 that the USDOT report is ultimately a review of CalTrans rather
16 than Timberworks.  (See Yokota Decl., ¶ 7).  These allegations,
17 involving as they do CalTrans' own policies and procedures in
18 awarding contracts, are not properly the subject of a claim under
19 the Act.  The Allied Mold court notes that "the FCA is not an
20 appropriate vehicle for policing technical compliance with
21 administrative regulations.  Allied Mold, 94 Cal. App. 4th at
22 865-66, citing Durcholz, 189 F.2d at 545, n.2.  The court
23 concludes that failure to follow proper contracting practices, as
24 Stierli claims occurred here, is not a "proper vehicle" for
25 invoking the False Claims Act.  Id.
26 ///
27 ///
28 ///

12

The State further points to its legitimate interest in ensuring that the False Claims Act is not "misused by unsuccessful, disgruntled public contract bidders as a device to intimidate competitors." (Moving Points and Authorities, 9:24-26). Otherwise, the State argues, "every award process could potentially be converted into a CFCA action with the winning bidder facing the specter of civil penalties and treble damages[1] even when the state- the real party in interest- contends no false claim was committed." (Id. at 10:1-3). This also constitutes a valid justification for moving for dismissal in this matter.

**CONCLUSION**

Based on the foregoing, both the State of California and the United States have demonstrated valid justification for dismissing the present action. First and foremost, no fraudulent claim upon which liability can attach has been demonstrated. In addition, the gravamen of Stierli's claim is not susceptible to remediation under the False Claims Act in any event, and other legitimate factors in favor of dismissal have also been identified.

---

[1] Although no issue has been raised concerning the work done by Timberworks on the project in question, and even though CalTrans had full knowledge of the circumstances surrounding its bid before any request for payment was made, Stierli nonetheless seeks treble damages in the amount of three times the 1.107 million contract price (totaling $3,321,000) and an additional $10,000 per each of eighteen payment requests for a total claimed liability of $3,501,000 on the part of Timberworks. (See Stierli's Memo of Points and Authorities in Support of Motion for Summary Judgment, 12:9-14).

13

1  Because Stierli cannot show that these concerns are unfounded,
2  the Motions to Dismiss presently before the Court are GRANTED.[2]
3  Inasmuch as this ruling effectively disposes of the lawsuit, it
4  is not necessary to rule on either of the Cross Motions for
5  Summary Judgment also before the Court and the Court declines to
6  do so.
7       IT IS SO ORDERED.

9  DATED: July 10, 2006

                                  _____
                                  MORRISON C. ENGLAND, JR
                                  UNITED STATES DISTRICT JUDGE

---

[2] Because oral argument will not be of material assistance, the Court orders this matter submitted on the briefing.  E.D. Cal. Local Rule 78-230(h).

14